[Crim. No. 3306. In Bank.—May 28, 1930.]

In the Matter of the Application of MARY SLAYBACK for a Writ of Habeas Corpus.

Howe, Hibbitt & Johnson, Clifford A. Russell and O. F. Meldon for Petitioner.

U. S. Webb, Attorney-General, Wm. F. Cleary, Deputy Attorney-General, Neil R. McAllister, District Attorney, Guy P. Johnson, Chief Deputy District Attorney, and Horace F. Frye, Deputy District Attorney, for Respondent.

CURTIS, J.—An indictment was presented against the petitioner charging her with the crime of murder, to which she interposed the plea of not guilty, and also the plea of not guilty by reason of insanity. She was thereafter brought to trial on said indictment in the Superior Court of the County of Sacramento, before a jury, and found guilty of murder in the second degree. She was then tried upon her

plea of "not guilty by reason of insanity," and the jury returned a verdict of not guilty by reason of insanity at the time of the commission of the offense charged. Thereupon, the trial court committed her to the Napa State Hospital "to be there held and confined according to law." In this commitment it was recited that, "It appearing to the court that the defendant has not fully recovered her sanity, it is directed that the defendant be confined in the Napa State Hospital for the Insane, located at Napa, California."

Before the making of said order, the petitioner demanded of said Superior Court that she be given an opportunity to be heard on the question of whether she was at that time sane or insane, and offered to prove that she was then sane. This demand of the petitioner was denied by the trial court. After the making of said order of commitment, the petitioner filed a written demand with said court for a trial by jury to determine whether or not she was then sane, which demand was also denied by the trial court. Petitioner then filed with the Superior Court of the County of Sacramento a petition for a writ of *habeas corpus,* based upon the foregoing grounds, which was denied by said court. A like petition was filed in the District Court of Appeal and denied. Petitioner, thereupon, filed her present petition for a writ of *habeas corpus* in this court, directed to the sheriff of said county, in whose custody petitioner was then being detained. She claims that her detention and restraint are unlawful and illegal and prays that she may be restored to her liberty. In her petition she alleges that she was sane on the day said commitment was ordered issued and at all times thereafter. The writ was issued as prayed for and said sheriff has duly filed his answer and return thereto, in which he denied that petitioner was sane at the date of said commitment, or at any time thereafter, and further alleges that on the twelfth day of November, 1929, the date of the issuance of said writ of *habeas corpus,* the petitioner was in his custody by virtue of said commitment, but that on the day thereafter the petitioner was transferred to the custody and control of the superintendent of the state hospital at Napa, in accordance with the terms of said commitment, and is now being held by the superintendent of said hospital in accordance with the terms of said commitment.

In issuing the commitment under which the petitioner is now detained by the superintendent of the state hospital at Napa, the trial court purported to follow the course of procedure prescribed by section 1026 of the Penal Code, as enacted by the legislature of 1927. This section reads as follows:

"When a defendant pleads not guilty by reason of insanity, and also joins with it another plea or pleas, he shall first be tried as if he had entered such other plea or pleas only, and in such trial he shall be conclusively presumed to have been sane at the time the offense is alleged to have been committed. If the jury shall find the defendant guilty, or if the defendant pleads only not guilty by reason of insanity, then the question whether the defendant was sane or insane at the time the offense was committed shall be promptly tried, either before the same jury or before a new jury, in the discretion of the court. In such trial the jury shall return a verdict either that the defendant was sane at the time the offense was committed or that he was insane at the time the offense was committed. If the verdict or finding be that the defendant was sane at the time the offense was committed, the court shall sentence the defendant as provided by law. If the verdict or finding be that the defendant was insane at the time the offense was committed, the court, unless it shall appear to the court that the defendant has fully recovered his sanity, shall direct that the defendant be confined in the state hospital for the criminal insane, or if there is no such state hospital, then that he be confined in some other state hospital for the insane; *if, however*, it shall appear to the court that the defendant has fully recovered his sanity such defendant shall be remanded to the custody of the sheriff until his sanity shall have been finally determined in the manner prescribed by law. A defendant committed to a state hospital shall not be released from confinement unless and until the court which committed him, or the superior court of the county in which he is confined, shall after notice and hearing, find and determine that his sanity has been restored. In the event such hearing is held in the county from which the defendant was committed, notice as ordered by the court shall be given to the district attorney of said county. In the event such hearing is held in the county where the defendant is confined, notice as

ordered by the court shall be given to the district attorney of said county and also to the district attorney of the county from which said defendant was committed. Nothing in this section contained shall prevent the transfer of such person from one state hospital to any other state hospital by proper authority.''

The first contention of the petitioner is that her commitment is void as having been issued by the trial court without due process of law in that no hearing was afforded her prior to her said commitment. The position the petitioner takes is that section 1026 of the Penal Code, impliedly at least, provides for a hearing after acquittal on her plea of insanity and before she can be committed to a hospital for the insane, but that if said section fails to provide for such a hearing then it is unconstitutional and void for want of due process of law.

This section clearly contemplates a hearing as to the defendant's sanity ''if it shall appear to the court that the defendant has fully recovered his sanity,'' as he is then ''remanded to the custody of the sheriff until his sanity shall have been finally determined in the manner provided by law.'' The phrase ''in the manner provided by law'' evidently refers to those sections of the Political Code governing the apprehension, trial and commitment of persons charged with being insane. (Secs. 2168 to 2179, Pol. Code.) These sections of the code provide, among other things, for a hearing before the court, and, under certain conditions, for a jury trial. But these provisions of law are only made applicable to the case of a defendant when it shall appear to the trial court that the defendant has fully recovered his sanity. If it shall appear to the trial court that the defendant has not fully recovered his sanity, then, by the terms of section 1026 of the Penal Code, it is made the duty of the court to commit him to the hospital for the insane. Nothing is expressly said about any hearing as to his present sanity before the trial court shall issue the commitment, and we fail to find anything in the section from which it can be inferred or implied that any hearing was contemplated after the verdict of the jury that the defendant was not guilty by reason of his insanity, and before the commitment should issue. We must take the statute as we find it, and

have no right to read into it any provision not contained therein.

■ With this construction of the section the petitioner contends that it violates the ''due process of law'' clause of both the state and federal Constitutions. As before stated, the legislation involved herein is of recent enactment and the questions presented on this hearing are, in so far as the courts of this state are concerned, questions of first impression. In other jurisdictions, however, legislation of this character is of long standing, and the courts of these jurisdictions have frequently been called upon to pass upon the validity of the various statutes enacted within their respective jurisdictions.

In Ruling Case Law, volume 14, page 609, the following brief summary of the decisions of the various courts upon the subject is found: ''Nearly all of the states of this country, as well as England and Canada, have statutes relating to the confinement of one acquitted of crime by reason of insanity, and the right to confine one who is still insane, and who is dangerous to the public peace and safety, until such time as he can be released with safety, provided that the present existence of such insanity or dangerous condition is properly shown, has apparently never been questioned. A statute providing that a person acquitted of a criminal charge on the ground that he was insane when the offense was committed shall be committed to the asylum for the dangerous insane, is not *ex post facto* as to a person tried and acquitted on that ground, after the statute was enacted for an offense committed before its passage. As to the necessity for a finding as to the continuance of the insanity of one acquitted on that ground, as a prerequisite to his confinement, it is usually held that the insanity of such a person is presumed to continue until the contrary is shown, and that it is not necessary to hold the inquisition generally required by statute in the case of persons alleged to be insane before their commitment.''

In Corpus Juris we find the following statements of the law applicable to such legislation: ''Even when a defendant is acquitted by the verdict of a jury on the ground of insanity, the court may and should remand him to the custody of the sheriff or marshal on being satisfied that he is still insane and that it would be dangerous to permit him to be

at large, unless some other provision for such cases is made by statute. The legislature may, within its constitutional limitations, and often does, authorize the commitment of such a person until he becomes sane, if his discharge shall be deemed dangerous to the public peace or safety. At present the confinement of such person is a matter of common statutory regulation." (32 C. J. 753.) Again, on the same page, we find the following: "A statute providing for restraining prisoners who are acquitted on the ground of insanity contemplates insanity existing at the time of the trial or acquittal. Where one accused of a crime has been acquitted thereof on the ground of insanity, the court may order the commitment without further hearing to determine his insanity, if it deems it dangerous to let him go at large. . . . " Corpus Juris, in volume 12, at page 1211, summarizes the law on this subject as follows: "Statutes providing that accused persons acquitted on the ground of insanity may, without further hearing, be committed to a place of confinement have in some cases been declared void for want of due process, but by the weight of authority, they have been sustained as constitutional."

Among the cases relied upon by the authors of the publications just mentioned we may mention the following: *Ex parte Clark,* 86 Kan. 539 [Ann. Cas. 1913C, 317, 39 L. R. A. (N. S.) 680, 121 Pac. 492]; *In re Gasquet,* 136 La. 957 [68 South. 89]; *People ex rel. Peabody* v. *Chanler,* 133 App. Div. 159 [117 N. Y. Supp. 322], affirmed 196 N. Y. 525 [25 L. R. A. (N. S.) 946, 89 N. E. 1109] (case of Harry K. Thaw); *People* v. *Baker,* 59 Misc. Rep. 359 [110 N. Y. Supp. 848] (case of Harry K. Thaw); *State* v. *Snell,* 46 Wash. 327 [9 L. R. A. (N. S.) 1191, 89 Pac. 931]; *Ex parte Brown,* 39 Wash. 160 [109 Am. St. Rep. 868, 4 Ann. Cas. 488, 1 L. R. A. (N. S.) 540, 81 Pac. 552].

We will refer to the text of only a few of these cases. All the statutes under consideration were similar in their terms to section 1026 of the Penal Code. In *Ex parte Brown, supra,* the court, on page 553 (81 Pac.) of the opinion, held as follows: "Has the petitioner been deprived of due process of law in the premises? He was tried before a jury, to whom he himself submitted the issue that he was insane when the crime was committed. He was permitted to fully introduce his evidence upon that subject, and the

jury were instructed as to their duty in the premises. The verdict returned was in his favor upon the issue which he tendered, and he was therefore accorded due process of law and the right of trial by jury upon that subject. The jury found that he was insane, and it was the manifest duty of the court to enter some kind of a judgment upon the finding of the jury. The petitioner erroneously assumes that it was a judgment entered in a new and original proceeding without due process of law and without opportunity for a hearing. It was, however, a judgment rendered upon the verdict of a jury which had been regularly returned in a proceeding wherein all constitutional rights had been accorded.''

In *Ex parte Clark, supra,* the Supreme Court of Kansas, after an extended review of the authorities which have given consideration to statutes similar in terms to section 1026 of the Penal Code of this state, and particularly in reference to their constitutionality, on page 495 of the opinion (121 Pac.) gives its conclusion in the following language: ''The grounds upon which the statute was held valid suggested in these opinions may be briefly summarized thus: (1) That insanity of a nature dangerous to others proved on the trial was presumed to continue to the time of commitment; (2) that the commitment was based on evidence showing the continuance of such insane condition; and (3) that, the commitment resulting from the express command of the statute, the trial and verdict upon the criminal charge was only an equivalent of proceedings provided to determine the question of insanity in cases not involving a charge of crime. Doubtless there is merit in each of these views, and each should have weight in upholding a statute which is not to be set aside unless clearly unconstitutional. If the legislature in framing the law sought to give practical effect to the ordinary presumption referred to which so well accords with ordinary observation and experience, no good reason is perceived why it could not do so, leaving a reasonable opportunity for a future determination of the question whether and when the detention should cease.''

In *People ex rel. Peabody* v. *Chanler, supra,* Justice Jenks, upon the hearing of a petition for the release of Harry K. Thaw and in construing a statute the terms of which were in many respects like those to be found in section 1026 of the Penal Code of this state, states his con-

clusions as follows: "But as there is no provision for enlightenment of the court in any other manner, it must be that the legislature intended that the court could rest its conclusion upon the evidence given at the trial and the appearance of the defendant thereat. If the defendant's plea was insanity and it had prevailed, it would follow that insanity was litigated at the trial. Although the inquiry at the trial would be directed to insanity at the time of the commission of the offense, yet the evidence might establish that such insanity had not ceased, but had continued, that it was chronic, that the defendant might then or thereafter, in the very nature of his disease, be subject to recurrences of a state of mind like unto that in him when he committed the alleged crime. And, moreover, such evidence might well bear directly upon the condition of the defendant at the time of the trial. . . . It cannot then be said that a defendant who makes the plea of insanity and seeks to establish it did not have notice under this provision of a hearing that might reveal his condition of insanity at the time of his trial, and a hearing of which the result might be such commitment upon acquittal for insanity, under the said provision of the Code of Criminal Procedure as was made in this case. . . . Such a commitment is not for the punishment of such a defendant, for there can be no punishment for him who has been acquitted, but it is for the protection of the public, made in the exercise of the police power of the state, which permits the restraint of an insane person who at large would be a danger to the peace and safety of the people. . . . "

From the foregoing citations of the law, the general rule, supported by the great weight of authority, would appear to be that a statute which provides that a person acquitted of a crime by reason of his insanity at the time the offense was committed may be without any further hearing committed to a place of confinement, is valid and is not subject to the objection that it is unconstitutional on the ground that due process of law has not been accorded to the accused.

We find but few decisions of the courts holding a contrary doctrine and the reasoning of these is neither convincing nor even persuasive, the one relied upon principally by the petitioner, *Brown* v. *Urquhart*, 139 Fed. 846, having been reversed by the Supreme Court of the United States, upon the

ground that the federal court had no jurisdiction in the matter, and without having expressed any opinion as to the legality of Brown's imprisonment. (*Urquhart* v. *Brown,* 205 U. S. 179 [51 L. Ed. 760, 27 Sup. Ct. Rep. 459].) The commitment considered by the court in the case of *Brown* v. *Urquhart* was the same process held valid by the Supreme Court of the state of Washington in *Ex parte Brown, supra.*

The commitment under which the petitioner is now being held is, therefore, a valid warrant of authority and justified the detention of the petitioner at least in its inception.

■ However, as we have seen, the petitioner alleges that she has fully recovered her sanity, and that at the date of said commitment she was and now is sane. She, therefore, contends that, notwithstanding the regularity and validity of her original commitment, she is now entitled to be restored to her liberty, and that any further detention of her under said commitment is illegal and without warrant of law. The allegation of the petitioner that she has recovered her sanity is denied by the respondent. Nevertheless, the petitioner insists that she is at least entitled to a hearing upon the issue of her present sanity and that upon proof thereof this court is in duty bound to discharge her from her present imprisonment. Undoubtedly the petitioner is correct in her contention unless such a hearing is legally withheld from her by the terms of section 1026a of the Penal Code enacted in 1927. This section of the code was passed at the same time the legislature enacted section 1026 of the same code and reads as follows:

"A person who has been committed to a state hospital, as provided in section 1026, may apply to the superior court of the county in which he is confined or of the county from which he was sentenced, to be released on the ground that his sanity has been restored. No hearing upon such application shall be allowed a person until he shall have been confined for a period of not less than one year from the date of the order of commitment, and if the finding of the court be adverse to him upon such, or any subsequent, application for release, on the ground that his sanity has not been restored, he shall not be permitted to file a further application until one year has elapsed from the date of hearing upon his last preceding application. In any hearing authorized by this section the

burden of proving that his sanity has been restored shall be upon the person applying for such hearing."

The undoubted effect of this section of the code is to impose upon a defendant coming within its terms detention and restraint in a hospital for the insane for the period of one year from the date of the order of the commitment; this restraint and detention to continue during said period of time irrespective of the fact that said defendant may before the expiration of said year have recovered her sanity.

Petitioner contends that by the terms of the section she is punished for a crime committed while insane. That punishment cannot be legally inflicted upon a person for an act committed while such person was insane appears to be the consensus of the authorities generally. (14 R. C. L. 598; *State* v. *Strasburg*, 60 Wash. 106 [Ann. Cas. 1912B, 917, 32 L. R. A. (N. S.) 1216, 110 Pac. 1020].) In that case the Supreme Court of the state of Washington declared unconstitutional a statute of that state which attempted to deprive a defendant accused of crime of interposing a plea or defense of insanity. We are not fully convinced, however, that the detention which the petitioner is now subject to can be said to be an imprisonment for the punishment of any crime. It is true that she is deprived of her liberty temporarily, but not every deprivation of one's liberty can be considered as an imprisonment for crime. It often becomes necessary to take into custody those who are mentally afflicted and detain them until they become no longer a menace to the public nor dangerous to themselves. "Nothing can be clearer than the duty of the state to restrain and confine the insane, not only for their own safety and protection, but for the safety and protection of the public. The relation between the two is that of guardian and ward. The confinement in an asylum is not of the same character as imprisonment for the punishment of an offense. It is a necessity growing out of the inability of the mentally afflicted to care for themselves or prevent injury to others." (*Hammon* v. *Hill*, 228 Fed. 999, 1001.)

If it is the duty of the state to restrain one mentally afflicted, as held by the above authority and others that might be cited here, this duty becomes far more urgent and pressing when it is proven that such person is not only insane, but has developed criminal tendencies as a result of

his mental derangement which has caused him to take the life of a human being under circumstances which, but for his mental state, would amount to murder. In endeavoring to perform this duty of caring for those who are mentally afflicted and of protecting the public from injury by those insane persons who have been proven to possess criminal tendencies, even to the extent of committing acts which, but for their mental state, would be serious crimes, the legislature has enacted section 1026a of the Penal Code, requiring that such persons, when it shall appear to the trial court that they have not fully recovered their sanity, shall be confined in a hospital for the insane for the period of one year before any application for their discharge shall be entertained by any court. Is such an enactment unreasonable or beyond the power of the legislature to enact? We think not. Insanity has so many different forms and its manifestations are so varied and uncertain that it is often impossible for the most skilled alienist or astute judge to detect its existence or to predict the time of its recurrence, when the patient appears to be for the time free from the affliction. The restraint and detention imposed is not, as we have seen, for the purpose of inflicting punishment upon a defendant but to permit a sufficient length of time to elapse to enable those who may be called upon to pass upon the sanity of the patient to intelligently give their judgment as to whether or not he has recovered his reason. The legislature has fixed this time as one year. Perhaps a lesser or greater time would serve the same purpose, but the legislature was in as good a position to judge of the time required as are the courts. No definite showing has been made that the time so fixed is an unreasonable time, and as the matter is one primarily for the legislature we see no reason to overturn their action.

The contention is made that the legislature has attempted to suspend the right to the writ of *habeas corpus.* There is no merit in this contention. The section simply provides that no hearing as to the sanity of the defendant shall be heard until he shall be confined one year. In other words, the section provides that the recovery of the sanity of the defendant shall not be a sufficient ground or reason for his release until the elapse of one year from his commitment. This requirement we have held to be valid. The

commitment, therefore, if valid in other respects, would be a complete answer to the application for the writ. Any other defect in the commitment, or any other ground for her release can be raised by defendant at any time upon *habeas corpus* proceedings.

We are of the opinion, therefore, that the section of the code in question is not subject to any of the objections made to it by petitioner, that the commitment under which the petitioner is now held is legal and authorizes her detention, and that she is not entitled in this proceeding to show that she has recovered her sanity as one year has not elapsed since the date of her commitment.

The writ is discharged and the petitioner is remanded.

Shenk, J., Preston, J., Waste, C. J., Seawell, J., and Richards, J., concurred.