90 Cal.App.2d 680 (1949)
Estate of PETER GESTNER, an Incompetent Person. DEPARTMENT OF MENTAL HYGIENE OF THE STATE OF CALIFORNIA, Appellant,
v.
BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), as Guardian, etc., Respondent.
Civ. No. 13949. 
California Court of Appeals. First Dist., Div. One. 
Mar. 18, 1949.
 Fred N. Howser, Attorney General, and Elizabeth Palmer, Deputy Attorney General, for Appellant.
 William J. O'Keefe, for Respondent.
 BRAY, J.
 Two appeals by the Department of Mental Hygiene of the State of California: (1) from the order of the probate court approving the 16th annual account of the Bank of America National Trust and Savings Association, as guardian of the estate of Peter Gestner, an incompetent person, and overruling the department's objections to such account; and (2) from the order denying the department's petition for an order directing payment of board, care and maintenance of said incompetent at the Mendocino State Hospital.
 There are two questions presented: (1) May the superior court, sitting in probate, refuse to hear and determine a disputed claim of the department against the estate of an incompetent for board, care and maintenance at a state institution? (2) Is the estate of an incompetent committed to a state mental hospital liable for care furnished prior to the 1945 amendment to section 6650 of the Welfare and Institutions Code?
 Facts
 Peter Gestner was charged in Los Angeles County with the crime of burglary. He pleaded not guilty and not guilty by reason of insanity. On May 13, 1931, a jury found him guilty of first degree burglary. The following day, on the trial under the second plea, the jury returned a verdict that he was insane at the time of the commission of the offense. Section 1026 of the Penal Code provides, in effect, that upon such verdict, the trial court, unless it appears that the defendant has fully recovered his sanity, shall direct that the defendant be committed to the state hospital for the criminal insane. Pursuant to this section, on May 20, 1931, the trial court committed Gestner to the Mendocino State Hospital, where he has remained ever since.
 In November, 1931, the Bank of America was appointed guardian of his estate. It immediately qualified, and ever since has been such guardian. From its appointment, to and including April 30, 1945, the guardian paid to the Department of Institutions (appellant's predecessor) upon demand the sum of $2,049.67 for board, care and maintenance of the incompetent at the hospital. For the period commencing May 1, 1945, no payment has been made. *683
 The guardian filed its 16th annual account. The appellant immediately filed its objections to the account and its petition for an order directing the guardian to pay the department the sum of $840, being the unpaid board, etc., at the rate of $40 per month for the period from May 1, 1945, to December 31, 1947, and to pay $40 per month thereafter as long as Gestner might be confined in the hospital. No objection was made to any of the items appearing in the account. Appellant's only objection to the account was the failure of the guardian to include therein the above mentioned $840. The estate has sufficient assets to pay the department's demands. The Veterans Administration was represented at the hearing (the estate receives from it a pension of $72 per month). It and the guardian took the position that as Gestner was confined in the hospital under section 1026 of the Penal Code there was no liability for his care and maintenance prior to a change in the law, effective September, 1945; that the $2,049 paid by the guardian was erroneously paid out and should be offset against the liability from 1945 on. In view of the correctness of the items of receipt and disbursement in the account, the attack here is not on the denial by the court of the objections to the account, but to the denial of the petition for an order directing the payment by the guardian of the care and maintenance of the incompetent. The court felt that all matters in this respect could be threshed out better in a civil action, and denied the petition.
 1. Had the Probate Court the Right to Refuse to Consider Appellant's Petition?
 [1] Both sides agree that at the present time there are two statutes providing methods for the enforcement of the payment by the incompetent's estate of his care at a state hospital. One is section 6658 of the Welfare and Institutions Code, which reads: "The Department of Institutions may in its own name bring an action to ... recover for the use and benefit of any State hospital or for the State the amount due for the care, support, maintenance, and expenses of any patient or inmate therein ... against any person, guardian, or relative liable for such care, support, maintenance, and expenses." This section is based on former Political Code section 2197 as added by Statutes 1903, chapter 364, section 1, page 513, as amended. The other is section 6655 of the Welfare and Institutions Code, based on former Political Code section 2181 as added by Statutes 1903, chapter 364, section 1, page *684 506. This section reads in part: "If any person committed to a State mental hospital has sufficient estate for the purpose, the guardian of his estate shall pay for his care, support, maintenance, and necessary expenses at the mental hospital to the extent of the estate. Such payment may be enforced by the order of the judge of the superior court where the guardianship proceedings are pending. On the filing of a petition therein by the department, showing that the guardian has failed, refused, or neglected to pay for such care, support, maintenance, and expenses, the court, by order, shall direct the payment by the guardian. Such order may be enforced in the same manner as are other orders of the court."
 It is respondent's position that while the department may proceed under either or both of these sections, if it proceeds under the latter section, the probate court may, in its discretion, because of press of business or other reason, refuse to accept jurisdiction. Appellant, on the other hand, contends that the two sections give the department the choice of election, and if it proceeds under the second section, the probate court must accept jurisdiction and entertain the proceeding. We agree with this latter contention.
 In 1901, in Guardianship of Breslin, 135 Cal. 21 [66 P. 962], the Supreme Court held (p. 22): "The superior court sitting in probate has no jurisdiction to hear and determine a disputed claim against the guardian or the estate. It can settle a guardian's account, and can allow or reject any item of expenditure which he had deemed a proper charge and had paid; but when there is a claim against the estate which the guardian contests as invalid, the issue thus raised between the claimant and the guardian is the proper subject of a civil action, and can be legitimately brought before a court only by such action. There is no provision of our code on the subject of guardian and ward which undertakes to give to the probate court jurisdiction to determine contests between alleged debtors and creditors such as the one involved in this appeal." It is significant that two years later the Legislature adopted both section 2181 of the Political Code, which is now section 6655 of the Welfare and Institutions Code, and section 2197 of the Political Code, which is now section 6658 of the Welfare and Institutions Code. Now, because of section 6655, it can no longer be said with reference to claims for care at a state mental hospital, as was said in the Breslin case, supra (p. 22): "There is no provision of our code on the subject of guardian and ward which undertakes to give *685 to the probate court jurisdiction to determine contests between alleged debtors and creditors. ..."
 Section 6655 provides "Such payment may be enforced ..." [fn. 1] Section 6658 provides "The Department of Institutions may in its own name ..." [fn. 1] However, if the department elects to file a petition in the probate court, section 6655 provides "... the court, by order, shall direct the payment by the guardian." [fn. 1] Section 6655 contains nothing that would justify the conclusion that the probate court may refuse jurisdiction of a petition filed under that section. Nor is there any reason why that court may not try all issues which could be raised in a proceeding under section 6658. Such a trial would not be as onerous or time-consuming as most will contests which must be tried in the probate court. That such issues may be tried in the probate court is shown by the decision in Estate of Jacobson, 56 Cal.App.2d 255 [132 P.2d 229]. There the Department of Institutions had applied to the probate court for an order requiring the guardian of an incompetent's estate to pay its claim for care of the ward at a state hospital. At the hearing, the guardian contended that a part of the claim was barred by section 345 of the Code of Civil Procedure which provides in part that "actions for the recovery of money due on account of the support of patients at the state hospital" is barred after four years. The department took the position that this was a "proceeding" and that section 345 could not apply as it referred only to "actions." In holding that the section did apply the court said (p. 258): "The instant proceeding has all the characteristics of an action at law. ... The fact that the proceeding is one within the administration of the incompetent's estate does not distinguish it in its essentials from an ordinary action at law or in equity. The department could have sued the guardian in an independent action. (Welf. & Inst. Code, 6658.) The adjudication is just as conclusive on the parties as if rendered in an action at law, except perhaps for the power of modification or termination by order of court." The reference to the fact that the department could have sued the guardian in an independent action, coupled with the holding that the probate proceeding has all the characteristics of an action at law, supports our holding that the election as to which proceeding to bring is that of the department and not that of the court. The probate court, being more familiar with the *686 affairs of the incompetent's estate, may be even in a better position to pass upon the questions raised than would the civil department. It would be a rather strange action of the Legislature to provide, in effect, that the department may choose its forum when a guardian refuses to pay for the care of its ward at a state hospital and then when the department exercises its choice of the probate court as the forum, that court could force the department to start all over again in another court.
 The dissenting opinion herein intimates that because of certain recitals in the order, the denial of the petition was because the court exercised an independent judgment on the merits by weighing certain factors, such as the condition of the estate, against the department's claim. The respondent does not claim this. It concedes that the probate court refused to hear the petition, but attempts to justify its action on the ground that the court had the power to require that the questions involved be heard in a civil action. The record supports this concession, as the court so stated. That this statement of the court may be considered by us to determine the "process by which judgment was reached, or the basis on which the court" acted, is well established in Union Sugar Co. v. Hollister Estate Co., 3 Cal.2d 740 [47 P.2d 273]. (See rule 5(a), Rules on Appeal, which permits the opinions of the trial court to be brought up. See, also, Noble v. Kertz & Sons Feed etc. Co., 72 Cal.App.2d 153 [164 P.2d 257].)
 2. Liability of Estate
 [2a] The liability of the estate for care of the incompetent subsequent to September 15, 1945, the effective date of the amendment of that year to section 6650, Welfare and Institutions Code, is conceded. The controversy is over the question of liability prior to that amendment, during which time there was no statute expressly requiring the estate of a person committed to a state hospital pursuant to the provisions of section 1026 of the Penal Code, to pay for his care while there. Section 6650, Welfare and Institutions Code, then read: "The husband, wife, father, mother, or children of an insane person or inebriate, the estates of such persons, and the guardian and administrator of the estate of such insane person or inebriate, shall cause him to be properly and suitably cared for and maintained, and shall pay the costs and charges of his transportation to a State institution for the insane or inebriates. The husband, wife, father, mother, or children of an insane person or inebriate, and the administrators of *687 their estates, and the guardian and/or administrator of the estate of such insane person or inebriate, shall be liable for his care, support, and maintenance in a State institution of which he is an inmate."
 In 1945 the section was amended by adding: "... such liability shall exist whether the mentally ill person or inebriate has become an inmate of a state institution pursuant to the provisions of this code or pursuant to the provisions of Sections 1026, 1368, 1369, 1370, and 1372 of the Penal Code."
 Appellant contends that this amendment was merely a clarification of existing law, while respondent contends that it provided a liability where none existed before, and hence that the estate is entitled to an offset of the $2,049 total payments made by it over a period of approximately 13 years, under the mistaken assumption that it was liable for the ward's care, and is not liable for the period May 1 to September 15, 1945.
 The amendment did not establish a new liability, but merely clarified the existing law. Section 6650 as it stood prior to amendment in no wise limited the liability of relatives and estates of persons committed to state mental institutions for their care. Nor was there anything in Penal Code section 1026 or the following sections which did so. [3a] Nor is the commitment under that section penal in character. The section provides: "If the verdict or finding be that the defendant was insane at the time the offense was committed, the court unless it shall appear to the court that the defendant has fully recovered his sanity shall direct that the defendant be confined in the state hospital for the criminal insane. ..." (Emphasis added.) Thus, if a person found not guilty by reason of insanity appears to be sane at the time of the verdict, he may not be committed to a state hospital. The section provides that a hearing must be had. (In re Slayback, 209 Cal. 480 [288 P. 769], held that such hearing is the type then provided for in Political Code section 2168 et seq., now Welfare and Institutions Code section 5050 et seq.) If found sane, the person must be released from custody. If the person is committed under section 1026 to the state hospital, section 1026a provides that a hearing upon the question of his restoration to sanity cannot be held for one year. Concerning the confinement for that period, the court in In re Slayback, supra, said (p. 491): "The restraint and detention imposed is not, as we have seen, for the purpose of inflicting punishment upon a defendant but to permit a sufficient length of time *688 to elapse to enable those who may be called upon to pass upon the sanity of the patient to intelligently give their judgment as to whether or not he has recovered his reason."
 [4] At the oral argument, it was suggested, and the dissenting opinion contends, that because one not committed under section 1026 is entitled to release upon recovering his sanity, while one committed under that section must wait one year before having the recovery of his sanity determined, a construction of section 6650 as amended which requires a person who has become sane during that period, to pay for his care at the state hospital while he is awaiting the expiration of the year when a hearing may be had, would make the section unconstitutional. The incompetent here admittedly was insane during that year and still is. Therefore, as he is not in the class of persons as to whom the section is claimed to be unconstitutional, neither he nor his guardian is in a legal position to raise that question. Moreover, the court in In re Slayback, supra, expressly held, contrary to this very contention, that the section is constitutional.
 [5] Section 6655 at all times has read: "If any person committed to a State mental hospital has sufficient estate for the purpose, the guardian of his estate shall pay for his care, ..." (Emphasis added.) This applies to "any person" who is committed for custodial care, and is not limited to those committed under section 5050, et seq., of the Welfare and Institutions Code.
 There are no decisions interpreting section 6650 as it read prior to the amendment, as to whether the liability therein set forth applied to sections 1026, 1368, 1370 and 1372 of the Penal Code. (The latter three sections apply to situations where doubt as to the sanity of a person charged with a crime appears at any time during the pendency of a criminal action.) Hence, cases like Whitley v. Superior Court, 18 Cal.2d 75 [113 P.2d 449], holding that in adopting a statute the Legislature is presumed to have known of prior court decisions, does not apply.
 Respondent contends that the fact that prior to the amendment there was no liability for care of persons committed under section 1026 is attested by the attorney general's opinions theretofore given. Respondent refers particularly to Opinion NS 5737, March 16, 1945, in which opinion, after referring to previous opinions No. 9875, April 14, 1935, and No. 10,009, June 18, 1935, the attorney general states that in view of the previous opinions, plus "the apparent departmental construction of Sections 6650 and 6651 in connection *689 with commitments under Section 1370 of the Penal Code, we are of the opinion that persons committed to a State hospital under Sections 1026 and 1026a and 1367 et seq., their estates or their responsible relatives are not liable for the charges for hospital care and maintenance. As there appear to be no other reasons for not holding such persons, their estates and their relatives liable for hospital care and maintenance, we suggest that if the Department of Institutions feels a charge proper it endeavor to have the Welfare and Institutions Code amended to specifically include liability of persons committed under Sections 1026 and 1370 of the Penal Code, their estates and their relatives."
 Respondent contends that the Legislature is presumed to know of opinions of the attorney general interpreting statutes, and therefore, the fact that the Legislature, almost immediately following the date of this opinion, adopted the amendment to section 6650, shows that it was creating a liability which theretofore did not exist. If the Legislature is presumed to know of the attorney general's opinions, a point we do not now decide, then it must have known of the confusion that existed in some 25 prior opinions as to liability under sections 1026 and 1368, 1370 and 1372 of the Penal Code. From 1899 to December 1, 1931, the Department of Mental Hygiene had been uniformly advised by the attorney general that a county was responsible for the criminally insane, without any reference to section 1026, and that where the county was responsible it was authorized to collect from their estates or responsible relatives. The history of the later opinions is succinctly set forth in appellant's reply brief: "Opinion 7851 issued December 1, 1931, held that persons committed under Penal Code Section 1026 are not the responsibility of a county, but no opinion was rendered as to the liability of their estate or relatives for their care. On December 7, 1934, Opinion 9708 held that the estate of a convict committed to a State Hospital pursuant to Section 1587 of the Penal Code was legally responsible for his support after the expiration of the term of sentence. This holding was at least an indirect authorization for the Department of Mental Hygiene to collect the cost of maintenance of one committed under Penal Code Section 1026 inasmuch as he was in the hospital merely for the duration of his mental illness and was not undergoing a term of imprisonment nor under sentence. ... Opinion 9875, issued April 18, 1935 ... directly advised that the guardian of an estate of an insane person so committed was not liable *690 for his support. This opinion was based on the theory that such a person was restrained by the State for the protection of the public. In Opinion 10678 issued May 7, 1936, the view was expressed that the estate of a person committed under Penal Code Section 1368 et seq. is liable for his maintenance under the provisions of Political Code Sections 2176 and 2181 (now Sections 6650 and 6651, Welfare and Institutions Code) which opinion is confirmed by Opinion 10678a issued May 26, 1936, in regard to the liability of legally responsible relatives. This opinion constitutes an indirect repudiation of Opinions 9875 and 10009 in that it upholds the right of the Department to collect for maintenance charges of persons committed pursuant to the provisions of the Penal Code, in permitting the application of Welfare and Institutions Code sections for collection of maintenance charges by the Department. Opinion 10679 followed on May 23, 1936, to the effect that under the provisions of Penal Code Section 1374 providing that any person charged with the commission of a public offense in any county, who is committed pursuant to the Political Code sections covering regular commitment, the maintenance of such persons shall be a county charge. Opinion No. 10822 issued July 3, 1936, again in effect repudiated the 1935 Opinions by holding that when Penal Code Section 1373 was amended in 1929 deleting responsibility of the county for maintenance claims for persons committed under 1369 et seq. that the estate and relatives of the incompetent became responsible for his support under the provisions of Political Code Section 2176 (now Welfare and Institutions Code, Section 6650.) No reference is made to this opinion in the opinion ... [opinion NS-5737, March 16, 1945] which stated that no collections had been made for persons committed under Section 1370 since the Legislature repealed Section 1373 in 1929. Section 1373 has never been repealed, but was simply amended in 1929 deleting county responsibility. ... Opinion NS702 issued November 9, 1937, held that the county was responsible for maintenance of any incompetent who had been committed while charged with the commission of a public offense and specifically held that this included the commitment of any person after May 25, 1937, under Penal Code Section 1026 ... NS702, issued April 30, 1938, amended that opinion to hold that the county is primarily liable and in turn could collect from the estate of the incompetent and responsible relatives for any one committed under Penal Code Section 1026 either before or after May 25, 1937. ... Opinion NS702 *691 was overruled by Opinion NS2958 issued September 26, 1940, following an amendment to Welfare and Institutions Code Section 6664 and held that that section did not impose liability upon a county for persons committed under Penal Code Sections 1026 and 1367 et seq. and ... that even prior to the amendment that Section 6664 did not impose such liability. It was determined however that where the county had paid such support in reliance upon Opinion NS702 that there was no provision authorizing a refund to such counties or making provision for the credit of such payment to future obligations of the counties. None of the opinions issued since November 9, 1937, included consideration of the question of responsibility of an estate or relative for support of the incompetent but merely considered county liability."
 Therefore, prior to the March, 1945, opinion, the last opinion concerning liability of the estate of a person committed during a criminal proceeding was that of July 3, 1936, holding liable the estate of a person committed under section 1368 et seq. It is obvious that the situation as disclosed by the multitudinous opinions of the attorney general needed clarification. [3b] The department has always collected maintenance charges for persons committed under section 1368 et seq. of the Penal Code, from their estates or relatives. There is no real difference as to persons committed under these sections and those committed under section 1026. They are both committed during the pendency of criminal proceedings against them. The type of confinement is the same. It is not penal but custodial. The only important difference between a commitment under section 1368 et seq. and under section 1026 is that in the latter case the confinement must be for at least one year. But even that fact does not make the commitment a penal one. (In re Slayback, supra, 209 Cal. 480.) For over 13 years, until the attorney general's opinion in March, 1945, the department collected for Gestner's care. These facts show an administrative interpretation of the law prior to the amendment, which the amendment merely continues in effect and clarifies. It is true that courts ordinarily infer an intent to change the law from a material change in the language of a statute. (W. R. Grace & Co. v. California Emp. Comm., 24 Cal.2d 720 [151 P.2d 215]; People v. Weitzel, 201 Cal. 116 [255 P. 792, 52 A.L.R. 811].) However, as said in the Grace case, supra (p. 729): "... the circumstances may indicate merely a legislative intent to clarify the law." *692
 The following statement in Hise v. McColgan, 24 Cal.2d 147, 159 [148 P.2d 616], applies here: "Under appropriate circumstances an amendment to a statute may be for the purpose of clarification rather than new matter or an alteration of the former law. [Citing cases.] Inasmuch as we have determined that the act prior to the amendment was applicable to the instant case, and the stated purpose of the amendment, we believe the amendment was only for clarification purposes."
 Napa State Hospital v. Yuba County (1903), 138 Cal. 378 [71 P. 450], cited by respondent, was a case brought to determine the liability of a county under section 1373 of the Penal Code (since repealed) for the care at a state hospital of a person committed under section 1370 of the Penal Code. In holding the county liable and section 1373 constitutional, the court used the following language (p. 381): "Persons charged with crime who are or become insane naturally belong to a class distinct and different from insane persons who are not so charged with crime. Under the general law, the expense of capture, detention, and prosecution of persons charged with crime is to be borne by the county. The party, though insane, is still detained under the law to answer for his crime when he shall become sane. If he were not charged with crime, though he were insane, he might not be sent to the asylum. His insanity might be of a nature not requiring that he be restrained, or his friends, relatives, or guardian might take care of him or consign him to a private institution." This language in nowise conflicts with the holding in the later case of In re Slayback, supra (209 Cal. 480). While such a person is in a class different from persons not charged with crime who become insane, such difference is not sufficient to make their confinement a penal rather than a custodial one.
 [2b] Inasmuch as the amendment merely clarified the law theretofore existing, the payments made by the guardian for care of the ward for approximately 13 years were properly paid and the estate is liable for his support from May 1, 1945, on. The probate court should hear the petition of the department, and unless the guardian has other defenses to the petition than those considered here, the petition should be granted.
 The dissenting opinion raises a question not raised by respondent, namely, that section 6650 as amended, as applied to persons committed under section 1026, is unconstitutional in another particular, namely, that such persons have not been found insane or mentally ill by a hearing of the type allowed persons committed under other statutes; that here, *693 the person is committed only because it did not "appear to the court that the defendant has fully recovered his sanity"; and further, that persons committed other than pursuant to section 1026 may be released from the state hospital on certificate of the medical superintendent, whereas persons committed under this section must have their sanity considered at a court or jury trial. But a jury preceding that finding by the court has found that the defendant was insane on the day of the commission of the crime. While there is a difference in the test of insanity as between that which will excuse a homicide and that which will cause a person ordinarily to be placed in a mental institution, still the defendant has had his jury hearing on the question of insanity. Moreover, although the test which the jury considered in Gestner's case was the lack of ability to distinguish right from wrong, it still is insanity, and as said in In re Slayback, supra, page 490, "... it is proven that such person is not only insane, but has developed criminal tendencies as a result of his mental derangement which has caused him to take the life of a human being under circumstances which, but for his mental state, would amount to murder." (Emphasis added.) " 'As to the necessity for a finding as to the continuance of the insanity of one acquitted on that ground, as a prerequisite to his confinement, it is usually held that the insanity of such a person is presumed to continue until the contrary is shown, and that it is not necessary to hold the inquisition generally required by statute in the case of persons alleged to be insane before their commitment.' " (P. 485, quoting from 14 R.C.L., p. 609.)
 As to the necessity for another hearing to determine the defendant's sanity at the time of the commitment, the court said that " 'the commitment resulting from the express command of the statute, the trial and verdict upon the criminal charge was only an equivalent of proceedings provided to determine the question of insanity in cases not involving a charge of crime.' " (P. 487, quoting from Ex parte Clark, 86 Kan. 539 [121 P. 492, 495, Ann.Cas. 1913C, 317, 39 L.R.A.N.S. 680].)
 There is nothing unreasonable in requiring that persons who have been found by a jury to have been insane at the time of the commission of the offense, and whose insanity is presumed to continue, be required to have their sanity established by a jury, rather than by a medical superintendent's certificate. It is a reasonable classification and requirement.
 As the court held in the above quoted excerpt from In re Slayback, that it was not unreasonable to leave to the judgment *694 of the trial court the question whether a person so adjudged insane appears to have recovered his sanity, and if it does not so appear, to require such person to receive treatment in a state hospital for a period of a year before any other test of his sanity is made, and as that case also holds that his confinement during that period is not penal, there is no good reason why, if financially able, such person should not be required to pay for his care and maintenance, just as all other persons committed to the state hospitals are required to do.
 There is no inconsistency between section 1026, Penal Code, and section 6650 et seq., Welfare and Institutions Code, on the one hand, and the provisions of the "Uniform Veterans' Guardianship Act" (Prob. Code, 1650 et seq.) on the other. This act merely provides the procedure for appointment of a guardian of an incompetent veteran and the procedure in handling his estate. Just as in any other guardianship proceeding, the probate court has the complete power to protect the ward and his estate, and if the condition of the estate does not justify payment to a state institution of the cost of care and maintenance of such ward, the probate court would have the right to refuse to order such payment, whether the ward be a veteran or otherwise. Section 6650 does not invade the fundamental and constitutional right of the judicial branch of the government of this state in that it interferes with the right of the judiciary to control the management of the estate of insane persons. Sections 6650 and 6655 establish the liability, but just as with any other liability of an incompetent, the probate court determines whether the estate is financially able to discharge that liability.
 The dissenting opinion refers to the statement in the order settling the account "that all of such present assets have been carefully examined and considered by the guardian; that their retention by the guardian in the guardianship estate has been for the best interests of the guardianship estate and those interested therein," examines the assets of the estate, and primarily because to be able to pay the $840 claim of the department, the guardian might have to sell some of the bonds of the estate, holds that the above quoted statement is a finding on the merits of the department's petition, and further holds, in effect, that the probate court did not abuse its discretion in refusing to order the guardian to pay the department's claim. That matter is not before this court, first, because such a contention was never made by the parties, and secondly, because, as heretofore pointed out, the court refused to consider *695 the petition on its merits. The above statement in the order referred only to the items of receipts and disbursements set forth in the account as presented. As to these, the appellant made no objection.
 The order is reversed and the probate court instructed to hear the petition and proceed in accordance with the views herein expressed.
 Peters, P. J., concurred.
 WARD, J.
 I dissent. All parties to this proceeding agree that this is a dispute between the Veterans Administration and the Department of Mental Hygiene of the State of California. The appellant herein will be referred to as the "department."
 The appeal involves an "order settling sixteenth annual account and report dated January 6, 1948 and the order denying the petition of the Department of Mental Hygiene for order directing payment of board, care and maintenance of an incompetent person at a state hospital." The main question involved is whether the estate of an inmate of an insane asylum may be forced to pay for the inmate's support and maintenance, regardless of his sanity, if he was not afforded a trial on the issue of sanity before he was committed to the asylum. (Welf. & Inst. Code, 6650, 6651, 6652, 6655.)
 A mistaken impression appears to have arisen that the probate judge refused to consider and determine "objections" to the annual account of the guardian filed by the department and the petition of the department for an order directing payment for board and maintenance of the alleged insane person. It is true that the probate judge suggested that on account of the busy condition of the probate calendar and the legal and equitable questions involved "it would be better to bring an action and determine the thing once and for all." The probate judge's views of the condition "of the business of the Court" in the absence of evidence to the contrary should be accepted on appeal. An action could have been filed under the provisions of Welfare and Institutions Code section 6658. The problems submitted on this appeal indicate that the probate judge was justified in suggesting that the department should have filed the claim as an independent action at law or in equity so as to have given the alleged insane, Peter Gestner, his guardian and the Veterans Administration the privilege of litigating the legal and equitable rights of the respective parties. The guardian may have desired to request an *696 amendment to his annual account for the purpose of claiming that prior payments should be declared offsets to future payments for the inmate's maintenance. The Veterans Administration might have attempted to intervene. A veterans' representative appeared at the hearing and stated, "There was no legal obligation to pay, and I should say that we requested the guardian to secure reimbursement for the 13 years they had paid in error, and the matter was heard before the State Board of Control, I believe, and a claim made." Likewise the State of California through one of its numerous governmental agencies might be interested in the former disposition of funds of the Gestner estate. The department takes the position that it is for its "convenience" to proceed under Welfare and Institutions Code section 6655.
 The impression that the probate judge refused to hear the objections probably arose from the following statement in the department's opening brief: "The Probate Court in denying the petition of the Department of Mental Hygiene ruled that it was without jurisdiction and that the Department of Mental Hygiene should sue the guardian in a civil action." There is not one word in the reporter's transcript or in the clerk's transcript to the effect that the probate court did not have jurisdiction to decide the question presented by the pleadings. The following appears in the department's closing brief: "Does the Superior Court, sitting in Probate, have the discretion to refuse to hear and determine a claim of the Department of Mental Hygiene against the estate of an incompetent person for board, care and maintenance at a State Hospital, when the said claim is disputed, said refusal to hear and determine the matter being based on the ground that the matter could be better determined in a civil action and on the ground that the Probate Court is too busy to hear and determine the matter?" That the last statement is incorrect appears in an order on the stationery of the attorneys for the department. The order relates that the "objections" were filed "pursuant to the provisions of Section 6655," and "said matter having been regularly heard; evidence oral and documentary having been offered and received; and said matter having been regularly submitted and considered by the Court; now, therefore, good cause appearing therefor, ..." (Italics added) it was ordered, adjudged and decreed that the objections "be overruled" and the petition "be denied."
 The written opinion of a judge may be enlightening as to the reason for making or refusing to make an order or decree, *697 but it may not be considered if it is in direct conflict with a finding of fact or a judgment order or decree. (Union Sugar Co. v. Hollister Estate Co., 3 Cal.2d 740 [47 P.2d 273].) It was stated in Goldner v. Spencer, 163 Cal. 317 at page 320 [125 P. 347], "But, as has often been said, we cannot consider these written opinions in determining whether or not the findings are sufficiently supported by the evidence." This being true of the written opinion of the judge, it is even more so of the mere oral comment made by him during the consideration of the case.
 Refusal to make an order for an allowance payable from a ward's estate is appealable (Prob. Code, 1600, 1630), but the appeal is specifically from the filed order and not from some comment made by the judge. After preparing and presenting a proposed order and obtaining the probate judge's signature that he had "considered" the objections of the department to the petition of the guardian the department is bound by such order.
 The appeal is pending before this court and all matters that are designated in the notice of appeal and that are necessary for a decision may be considered. Ordinarily, appellate courts are confined to the determination of the questions raised in the briefs, but in the present matter the real party in interest is an alleged incompetent. The appeal involves the status of such alleged incompetent in his relationship with the department, the guardian and the Veterans Administration from which comes the money which has caused a three party dispute. Some questions are suggested in this dissent that are not referred to in appellant's or respondent's briefs. During the period of litigation an incompetent, or an alleged incompetent, is a ward of the court. The court as the representative of government is the supreme guardian. (25 Am.Jur. 128, 205.) The courts have the duty as well as the right to protect those alleged to be insane and to be vigilant to safeguard their rights. (Cubbison v. Cubbison, 45 Ariz. 14 [40 P.2d 86, 89]; 25 Am.Jur. 7, 2.) The probate judge determined the matter in such manner that all pertinent questions may be decided on this appeal.
 The constitutionality of the Welfare and Institutions Code sections 6650, et seq., which provide that persons and estates shall be jointly and severally liable for the maintenance of an inmate of a state institution committed without trial under Penal Code section 1026, has never been passed upon judicially in this state. *698
 The questioned payments in this proceeding are separated into three periods. The guardian agrees that the department is entitled to payment during the last period. That admission, however, is not binding on this court, particularly in view of a possible claim by the Veterans Administration. If it should develop that the provision of the Welfare and Institutions Code covering payments for maintenance for an inmate committed without a hearing is unconstitutional, then neither the particular period involved nor the sanity of the inmate are vital questions.
 It should be further noted that in the Welfare and Institutions Code there has been an effort made to declare the word "insane" synonymous with the words "mentally ill." (Stats. 1947, ch. 919, 1 and 3.) The designation may be convenient and appropriate in the Welfare and Institutions Code, but it cannot change the long established definition of insanity as a test in a criminal case, namely, one who is unable to distinguish right from wrong.
 The real question is the constitutionality of Welfare and Institutions Code sections 6650 et seq. as applied to the facts of this case. The question should not be confused with the constitutionality of Penal Code sections 1026 and 1026(a) with regard to the liberty of an alleged insane person. The latter sections may be considered preliminarily. Article I, section 13, of the California state Constitution and the Fourteenth Amendment of the federal Constitution containing the due process clause refer to distinct and separate subjects: (1) life, (2) liberty and (3) property. A provision relative to the deprivation of liberty may have been declared constitutional, but if the deprivation of property is contrary to constitutional rights and inconsistent with other reasonable laws, that may be held unconstitutional. In re Slayback, 209 Cal. 480, 488 [288 P. 769], held that one "acquitted of a crime by reason of his insanity at the time the offense was committed may be without any further hearing committed to a place of confinement. ..." It was also held that incarceration in an insane asylum is not imprisonment for the punishment of a crime and that one year was a reasonable time to determine by observation whether the committed party had recovered from a condition of insanity. Whatever the views of a member of an intermediate appellate court as to a decision of the Supreme Court, the decision stands as the law of the state and is absolutely controlling on the precise issue involved until the Supreme Court should see fit to make a *699 change. The presumption that a person who was insane at the time of the commission of an offense is insane after his trial for the commission of such offense is a judicial presumption used to bolster a legislative pronouncement that one may be deprived of his liberty without a trial. (In re Slayback, supra.) That, however, is not the question presented on this appeal. Here it is the deprivation of property--not liberty--that is involved.
 It may be suggested that because the Supreme Court has declared that the deprivation of liberty without a trial--in such a situation as the Slayback case--is constitutional that the deprivation of property follows the same rule. To my mind it would be just as logical to hold that because one may be deprived of his liberty without due process he could be deprived of his life without due process. The purpose of the due process rule is to secure a reasonable notice and opportunity to be heard before a tribunal authorized to hear the matter. (Suckow v. Alderson, 182 Cal. 247 [178 P. 965].) The right may not be taken away by indirect legislation. (Lux v. Haggin, 69 Cal. 255 [4 P. 919, 10 P. 674].)
 The Welfare and Institutions Code, sections 6650 et seq., provides that certain relatives or an estate are liable for the care and maintenance of an "insane person or an inebriate." It is the department's contention that the amendment of 1945 to section 6650 of the Welfare and Institutions Code regarding those committed without trial under Penal Code section 1026 and its adjunct, 1026(a), "was for the purpose of clarification of the existing law." The department overlooks the fact that there was no existing law except the arbitrary rule of the department to require payment of relatives or the estate of the inmate for one so committed without trial. The attorney general over a period of years had rendered various opinions on this and kindred subjects. In 1936 an opinion was rendered that a person committed under Penal Code sections 1368 et seq. (providing for a trial by jury if demanded) was liable for expenses to the state. Penal Code section 1026 was not involved. In March of 1945 an opinion was issued holding that there was no estate responsibility under Penal Code section 1026 and other sections, including 1368. Under the provisions of the other sections a trial was permitted. The Legislature was in session and immediately amended the Welfare and Institutions Code sections 6650 and 6655 to include Penal Code section 1026 and other sections. It was an insertion of a legal provision relative to 1026 that never *700 existed before. It is impossible to clarify a nonexistent provision of a code section.
 Upon the principle that there is no capacity to form a criminal intent insane persons are declared incapable of committing crimes. (Pen. Code, 26.) Prior to 1927 there was no provision for a plea of "not guilty by reason of insanity." If at the time of the commission of an offense an accused was incapable of knowing and understanding that he was doing wrong he was entitled to an acquittal and release from custody. (People v. Kelley, 7 Cal.App. 554 [95 P.45].) If it appeared to any person, official or civilian, that subsequent to the time of acquittal such person was insane or incompetent, proceedings could be instituted in which the alleged insane or incompetent person was entitled to a trial upon that issue. (Pen. Code, 1367 et seq.) If adjudged insane, after hearing, the court had power to direct the insane's estate or certain relatives to contribute toward the expenses of his confinement.
 Peter Gestner, the party confined in a state insane asylum, is not a felon. The return of the verdict of not guilty by reason of insanity was in effect a declaration that the accused was not guilty of the offense charged. The restraint in the insane asylum is not for the purpose of inflicting punishment. (In re Slayback, 209 Cal. 480 at p. 491 [288 P. 769].) Peter Gestner was committed to the state asylum wherein criminally insane are confined because a jury had declared he was insane at the time the alleged crime was committed and because it did not appear to the trial court that Gestner had "fully recovered his sanity." The "insanity" referred to in Penal Code section 1026 is determined by the person's capability of determining right from wrong. All this procedure is in accordance with the provisions of Penal Code section 1026. Strange to say, if it had appeared to the court that Gestner had "fully recovered his sanity" it would have been encumbent upon the court to remand Gestner "to the custody of the sheriff until his sanity shall have been finally determined in the manner prescribed by law." (Italics added.) ( 1026.) Such a person is entitled to a trial.
 Welfare and Institutions Code section 6655 provides a limitation in venue to the county in which an inmate is confined or the county in which the criminal proceedings originated. The probate court in the county in which the confined person may have an estate is not permitted to determine whether the inmate is sane.
 Gestner, committed without trial because he appeared to be *701 insane, may only apply to the court for release from the state asylum once each year. On each yearly hearing, though committed without trial, the "burden of proving that his sanity has been restored shall be upon the applicant." (Pen. Code, 1026(a).)
 One strange feature in relation to an inmate of an insane asylum who is committed without trial and thereafter forced to pay for his incarceration is that if a trial judge has some doubt as to the same person's sanity during the pendency of a trial of "not guilty by reason of insanity," which is part of the criminal prosecution of the original offense charged, "the court must order the question as to his sanity to be determined by a trial by the court without a jury, or with a jury, if a trial by jury is demanded." "If the jury finds the defendant insane, the trial or judgment must be suspended until he becomes sane, and the court must order that he be in the meantime committed by the sheriff to a state hospital for the care and treatment of the insane, and that upon his becoming sane he be redelivered to the sheriff." "When he becomes sane, the superintendent must certify that fact to the sheriff and district attorney of the county." In brief, under Penal Code sections 1368 et seq., if during the trial of the accused "a doubt arises as to the sanity of the defendant" an accused is entitled to a trial before commitment to an asylum where he will be forced to pay for his incarceration (Welf. & Inst. Code, 6650-6655), but, under Penal Code section 1026, if at the termination of the sanity trial which is part of the criminal trial it shall appear to the court that the accused has not fully recovered his sanity, the court shall direct that the accused be confined without trial on the question of present sanity "in the state hospital for the criminal insane" (italics added), or if such hospital is not available then to some other hospital where, the department claims, he may be forced to pay for his incarceration.
 The preceding sections (Pen. Code, 1026 and Welf. & Inst. Code, 6650 et seq.) are inconsistent and contrary to the provisions of the "Uniform Veterans Guardianship Act." (Prob. Code, div. IV, chap. XV.) As will be noted later, all of the "benefits" obtained by the veteran Gestner are received from the Veterans Administration. Probate Code section 1651 provides that, "Whenever, pursuant to any law of the United States or regulation of the Veterans Administration, it is necessary, prior to payment of benefits that a guardian be appointed, the appointment shall be made in the manner *702 hereinafter provided." Probate Code section 1652(d) provides that, "In the case of a mentally incompetent ward the petition shall show that such ward has been rated incompetent by the Veterans Administration on examination in accordance with the laws and regulations governing the Veterans Administration." (Italics added.) A guardian may apply a portion of the income or the estate for the support of some other person, but only upon the order of the "court after a hearing." (Prob. Code, 1661.) The chapter contains other provisions relative to the conduct of the estate emphasizing the complete power of the probate court to protect the insane or incompetent veteran.
 If it should be held that In re Slayback, supra, is controlling, though property interest was not involved in that decision, then it is necessary to proceed forward to an examination of the mechanism provided in the Welfare and Institutions Code to force an inmate to pay for his own incarceration without a jury determination of insanity at the time of incarceration.
 The adoption of Welfare and Institutions Code sections 6650 et seq. is an invasion of the fundamental and constitutional right of the judicial branch of the government of this state, and particularly of the right of the judiciary to control the management of the estates of insane persons. The Probate Code, which became effective in 1931, is a revision, consolidation and adoption of new provisions applying to probate matters generally, including the appointment of guardians and the administration of estates of insane and incompetent persons. (Stats. 1931, chap. 281; Prob. Code, 1460, 1461.3, 1470 et seq.)
 Under the provisions of the Welfare and Institutions Code the amount of the payment for the support and maintenance of insane persons confined in a state hospital may not be fixed by the judicial branch of the government. The Welfare and Institutions Code section 6651 provides that the monthly rate for the care of the insane "where there is liability to pay for such care, support, and maintenance, shall be determined by the Director of Institutions, and shall be payable in advance." (Italics added.) (See also Welf. & Inst. Code, 5105.6.) Section 6652 provides that, "The Department of Institutions shall collect all the costs and charges mentioned in section 6650, or see that they are collected." Section 6655 provides that, "On the filing of a petition therein by the department, showing that the guardian has failed, refused, or neglected *703 to pay for such care, support maintenance, and expenses, the court, by order, shall direct the payment by the guardian. Such order may be enforced in the same manner as are other orders of the court." (Italics added.) In the Welfare and Institutions Code, "shall" is mandatory and "may" is permissive. ( 15.) There is also a provision that if there is not sufficient money on hand the court may make an order directing the guardian to sell personal or real property to pay for such maintenance.
 Section 6655 also provides that, "If a certificate from the medical superintendent of the State hospital in which the person is confined as a patient is filed in the office of the county clerk with the papers in the guardianship proceedings of the patient, in which certificate the medical superintendent states that the patient is suffering from a chronic form of insanity, and that in his opinion a recovery is beyond reasonable hope and that the patient will in all probability continue to be a charge in a State hospital until death, such certificate shall be prima facie evidence that the patient is not likely to recover or to be released from the hospital, and the guardian shall pay the amount due for his care, support, maintenance, and expenses at the hospital and such other charges as are allowed by law out of any moneys of the estate in his possession." (Italics added.) It is interesting to note that section 6655 only applies to estates. It is impossible to apply it to "relatives." Section 6658 provides that the department "may in its own name bring an action" against "his estate or any person" who may be liable. It was the latter section that the probate judge suggested the department should invoke.
 This court is bound by the order obtained by appellant that the probate court "considered" the petition of the guardian and the objections of the department filed thereto. In my opinion the conclusion is inevitable that the Welfare and Institutions Code sections giving unlimited power to force an inmate of an insane asylum or the estate of the inmate to pay for the inmate's incarceration on a commitment without a trial is unconstitutional. (Cal. Const., art. I, 11, 13; art. III, 1; art. IV, 25, third and twelfth; art. VI, 1a, subd. 5.) The probate judge was justified in overruling the objections of the department.
 Confining attention to point one in the notice of appeal directed to the probate court's approval of the annual account of the guardian, no objection is noted in the pleadings and *704 none in the briefs to the correctness of the items listed or the propriety of the expenditures.
 The report of the guardian shows that $72 is received from the Veterans Administration as a monthly pension. Several government bonds have been purchased for the account of Peter Gestner. Certain ordinary payments have been made as fees to the guardian and $5.11 as traveling expenses to the attorney representing the guardian. Twenty dollars is paid each month to a woman bearing the name of Gestner, though the record does not show her relationship to the inmate Gestner. Eliminating the bonds, the annual report shows a net balance of $217. The claim made by the department is $840. The report does not indicate that any allowance has been made for the inmate's personal comfort, known as a personal deposit fund. It is apparent that the only way the $40 monthly payment to the department could be allowed would be to resort to the sale of the present bonds and probably refrain from further purchases. In solving this problem, many involved and complex questions may be considered: Whether the relative of the inmate is adequately protected; the interest of the Veterans Administration who caused the monthly stipends to be paid the inmate; and the disposition of any surplus fund, upon the death of the inmate.
 These facts and problems indicate that in exercising an independent judgment the probate judge was justified in finding, "that all of such present assets have been carefully examined and considered by the guardian; that their retention by the guardian in the guardianship estate has been for the best interests of the guardianship estate and those interested therein."
 On appeal the department does not argue that the probate judge should "hear the petition" or that it be sent back for reconsideration. It is urged that the order denying the petition should be reversed and that the probate court be directed to allow the department's claim and that it continue for so long as Gestner remains an inmate of the state asylum.
 The order overruling the objections of the Department of Mental Hygiene of the State of California and the order, judgment and decree settling the 16th annual account should be affirmed.
NOTES
[fn. 1] 1. Emphasis added.
[fn. 1] 1. Emphasis added.
[fn. 1] 1. Emphasis added.