[Civ. No. 13745.   Second Dist., Div. Three.   Dec. 19, 1942.]

Estate of SOLOMON JACOBSON, an Incompetent Person. DEPARTMENT OF INSTITUTIONS OF THE STATE OF CALIFORNIA et al., Respondents, v. ROSE TRINZ, Appellant.

Bertram S. Harris for Appellant.

Earl Warren, Attorney General, and Alberta Belford, Deputy Attorney General, for Respondents.

SHINN, J.—Rose Trinz, guardian of the estate of Solomon Jacobson, an incompetent, has appealed from an order made in the estate matter which (a) ordered her as guardian to pay to the Department of Institutions of the State of California the sum of $2,362.60 for the maintenance of the incompetent in state institutions, between June, 1930, and April 1, 1941, and (b) denied her application for a *nunc pro tunc* order approving her payment of $7,760 as such guardian for the support of the mother of said incompetent and charging her guardianship account with moneys theretofore expended for that purpose.

With relation to provision (a) of the order, the sole question appears to be whether a part of the claim of the Department of Institutions was barred by the provisions of section 345 of the Code of Civil Procedure. That section provides in part: "that actions for the recovery of money

due on account of the support of patients at the state hospitals may be commenced at any time within four years after the accrual of the same.'' It is agreed that $980 would be due to the department for support of the incompetent within the four years preceding the filing of the petition in the estate proceeding seeking an order of court directing the guardian to compensate the department for support of Solomon Jacobson. The order required payments at the rate of $20 per month, in addition to the accumulated sum of $2,362.60 commencing April 1, 1941, and continuing until the patient should be discharged from the state hospital. While the notice of appeal is sufficient to call in question that provision of the order, it is not discussed in the briefs and we understand that the guardian does not question the validity or propriety of such provision.

The attorney general, on behalf of the Department of Institutions, takes the position that section 345 of the Code of Civil Procedure has no application to this proceeding which was initiated by a petition for an order requiring the guardian of the incompetent to pay for his support, because the section applies only to ''actions,'' while this is a ''proceeding'' in court and not an ''action,'' and further that the guardian is estopped to urge the statute of limitations as a defense to any portion of the claim. No authority is cited which directly or inferentially supports either of these contentions.

An action is defined by section 22 of the Code of Civil Procedure as ''an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense.'' Section 23 provides that ''Every other remedy is a special proceeding.'' The sections of the Code of Civil Procedure from 335 to 349, inclusive, refer to actions. All of those sections are contained in title III of part II of the code, as is also section 363, which reads as follows: ''The word 'action' as used in this title is to be construed, whenever it is necessary so to do, as including a special proceeding of a civil nature.'' We do not hesitate, in order to give to section 345 a just and reasonable interpretation and one that is consistent with the policy of the law underlying statutes of limitation, to hold that the proceeding in the estate of the incompetent which resulted in the order for support is an action within the meaning of that section. Statutes of limitation are for the pro-

tection of debtors against the assertion of claims the merits of which may become difficult or impossible of ascertainment through great lapse of time. They are rigorously invoked for the protection of the estates of decedents. (§ 708, Prob. Code.) ▇ And we can see no reason why the estate of an incompetent should not be shielded against the assertion of claims that are barred, those that accrue during his incompetency as well as those that accrued before.

▇ The instant proceeding has all the characteristics of an action at law. The petition ended with a prayer for an order requiring the guardian to pay the Department of Institutions for the support of the incompetent, for an order requiring the guardian to sell the assets of the estate if necessary for the purpose of complying with the order, and for general relief; an answer was filed raising issues of fact. The order that was made was in fact a judgment for the payment of money. (*Estate of Cheda*, (1921) 187 Cal. 322 [202 P. 133].) The fact that the proceeding is one within the administration of the incompetent's estate does not distinguish it in its essentials from an ordinary action at law or in equity. The department could have sued the guardian in an independent action. (Welf. & Inst. Code, § 6658.) The adjudication is just as conclusive on the parties as if rendered in an action at law, except perhaps for the power of modification or termination by order of court. We could not attribute to the Legislature an intention in enacting section 345 of the Code of Civil Procedure to make it applicable as a defense to claims asserted by one method of procedure but not by others, where every consideration of justice would require regard for the substance of the matters adjudged rather than the mere form of the procedure by which they were adjudged. Clearly the proceeding which resulted in the order is an action within the meaning of sections 345 and 363 of the Code of Civil Procedure. This construction is "necessary" in order that section 345 may be allowed to operate reasonably and without unwarranted discrimination.

▇ The claim of estoppel advanced by the attorney general is said to originate in the following facts: Solomon Jacobson from June, 1930, with the exception of a period of about a year in 1932-33, has been a patient in one or another of the state hospitals. Pursuant to the provisions of the Welfare and Institutions Code, sections 6650 to 6655, inclusive, a charge of $20 a month was fixed as a proper one for the sup-

port of the patient. In November of 1930 an attorney who then represented the guardian wrote a letter to the Department of Institutions to the effect that the estate consisted of a small amount of money being paid by an insurance company for the care and maintenance of the mother of the patient, who was an elderly woman, and that there was barely sufficient money to cover her living expenses. The letter further said, "They will call to see you soon and take the matter up with you regarding compensation. I trust that you will give them due consideration." The medical superintendent of the hospital replied that in view of the statements of the attorney's letter, no further bills would be sent to the guardian. The guardian did not file an inventory until January 30, 1941, and did not file or serve on the department any accounting until February, 1941. In the meantime the estate had received from life insurance companies some $22,000 and had had on hand at all times sufficient funds with which to pay the charges of the Department of Institutions for the support of the patient. The estate was receiving $80 per month from insurance policies. The undisputed evidence was that Solomon Jacobson, prior to the inception of his illness, was the sole support of his mother; that between October 1, 1930, and until the death of the mother November 27, 1938, the guardian paid out of the estate funds for the support of the mother $7,760, and that without the payment of said sums the mother would have become a charge upon the charities of Los Angeles County. There was no evidence to the effect that these facts were not known to the Department of Institutions during the period when no payments were insisted upon, nor does it appear that the representatives of the department were deceived as to the true facts. In its petition for the order the department did not allege the facts concerning the two letters nor any facts as an excuse for its delay in attempting collection of its charges. Far from relying upon the letters as a basis for an estoppel to plead the statute of limitations, the attorney general objected to their receipt in evidence. The court made findings covering the principal facts in issue but no findings covering any of the essential elements of estoppel. One of the conclusions of law was that the statute of limitations "does not apply under the above entitled facts to the Department of Institutions of the State of California," but there is nothing in the findings relating to the claimed

estoppel other than the facts we have stated pertaining to the exchange of correspondence and it is too clear for argument that a finding that defendant was estopped to rely upon the statute of limitations would have been unsupported by the evidence. The defense, as pleaded, was good, namely, that the portion of the charges which accrued more than four years prior to the filing of the petition April 10, 1941, was barred. The order should be modified and the sum of $2,362.60 should be reduced by the amount of $1,402.60 which accrued more than four years prior to the filing of the petition.

In her first accounting, rendered in February, 1941, the guardian claimed credits in the amount of $7,760 for sums expended in the support of the mother of the ward; these were disallowed, the account was attempted to be and perhaps was surcharged in that amount and the guardian's powers were suspended until the further order of the court. No appeal was taken from this order. In April, 1941, the guardian petitioned the court for an order, *nunc pro tunc,* allowing her credit for the claimed expenditures. After a hearing the court made findings to the effect that said payments had been made, but without order of court authorizing the same; that the estate, without deduction of the expenditures, amounted to $22,202.68, and denied the application for allowance of credit for all or any part of the expenditures for the mother's support. Upon the appeal from this part of the order it is insisted that the evidence showed that the ward had been the sole source of the mother's support; that while he had four married sisters, including the guardian, the mother would have become a public charge had she not been supported from the estate, and that the estate at all times had had on hand surplus funds, derived from payments made under the ''disability'' provisions of insurance policies, which the ward, had he been competent, would have used to furnish aid to his mother.

It may be conceded that if we should give the fullest effect to the conclusions and argumentative statements of the guardian as set out in the bill of exceptions, we could conclude that these facts were established but, even so, they would not require a reversal of the order. The account was not itemized and it was not supplemented by other evidence, no attempt was made to show the nature of the expenditures, no vouchers were furnished, and the proof generally was not

such as the court is entitled to have presented and should require in matters of accounting. It may be inferred that no better evidence was presented when the account was examined by the court in the first instance. It would be idle to contend that disallowance of claimed credits supported by no better proof is an abuse of discretion. Fiduciaries whose accounts come before the court for approval have a duty to the court to supply proof of the items of the accounts and in sufficient detail to give the court full information as to the nature and amounts of expenditures and the necessity therefor, together with such explanation as may be necessary in order to satisfy the court as to the propriety of the disbursements; they cannot expect the court to assume facts favorable to them as to which there is but doubtful proof or none at all.

It is quite true, as the guardian contends, that it would work a hardship upon her if she is not allowed credit for sums expended for the support of the mother which would have been properly paid from the estate of the son. If we were considering her final account, her position would be more serious because of the manifest insufficiency of her proof to justify the relief she seeks. ▪ But neither the order appealed from nor the order settling her first account forecloses a reexamination by the court of the matter in issue. When the final account is presented or in any intermediate accounting the court can and no doubt will reconsider the entire matter if a proper showing is made. (*Guardianship of Di Carlo,* (1935) 3 Cal.2d 225 [44 P.2d 562, 99 A.L.R. 990]; *Guardianship of Vucinich,* (1935) 3 Cal.2d 235 [44 P.2d 567]; *Estate of Eaton,* (1940) 38 Cal.App.2d 180 [100 P.2d 813].) If the proof shall show that the son had been the sole source of the mother's support and that except for support from his estate she would have become a public charge, and upon the presentation of a proper account, supported by sufficient proof, the court no doubt will allow credits for such expenditures as it would have authorized had application been made by the guardian for an order under the provisions of section 1558 of the Probate Code. That section provides that the court may, in its discretion, direct the guardian of an incompetent to distribute surplus income to the next of kin of the ward whom the ward would have aided if of sound mind, taking into consideration ''the amount of surplus income

available after due provision has been made for the proper support and maintenance of the ward, to the circumstances and condition of life to which the ward and said next of kin have been accustomed and to the amount which the ward would, in the judgment of the court, have allowed said next of kin, had said ward been of sound mind." The powers thus granted are broad and there is nothing in the section which so limits them as to preclude the court from approving expenditures already made for the support of the next of kin of the ward, made in good faith and under circumstances which would have moved the court to authorize the payments upon an application by the guardian or the next of kin under said section 1558.

The order is modified by substituting the amount of $960 for the amount of $2,362.60 therein, and as modified is affirmed, neither side to recover costs of appeal.

Schauer, P. J., and Shaw, J. pro tem., concurred.