[Civ. No. 15142. First Dist., Div. One. Aug. 18, 1952.]

Estate of JESSE PHIPPS, an Incompetent Person. CLARK ALLEN, as Guardian, etc., Appellant, v. DEPARTMENT OF MENTAL HYGIENE, Respondent.

Delaney, Werchick, Fishgold & Minudri and Everett P. Rowe for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Palmer, Deputy Attorney General, for Respondent.

BRAY, J.—The California Department of Mental Hygiene petitioned the probate court for an order directing the guardian to pay expenses incurred for care, support and maintenance of the incompetent at the Stockton State Hospital. From an order requiring him to do so, the guardian appeals.

## QUESTION PRESENTED

Can the estate of an incompetent be held liable for care at a state hospital furnished to an incompetent prior to the acquisition of any estate or property by such incompetent?

## AGREED FACTS

July 14, 1910, the superior court duly declared Jesse Phipps insane and that he should be treated in a state hospital and committed him to the Stockton State Hospital where he has been ever since and now is. Phipps is presently 80 years of age. At the time of his commitment and until the distribution to him on April 21, 1950, of a legacy under the will of Mary E. Barry, the incompetent had no estate. On April 10 the guardian of his estate was appointed. The probate court ordered the guardian to pay the department $2,400 for the incompetent's care, etc., for the five year period May 1, 1946, to April 30, 1951.

## IS THE INCOMPETENT LIABLE FOR CARE PRIOR TO ACQUISITION OF ESTATE?

 Section 6655 of the Welfare and Institutions Code provides: "*If* any person committed to a State mental hospital *has sufficient estate for the purpose,* the guardian of his estate *shall pay for his care, support, maintenance, and necessary expenses at the mental hospital to the extent of the estate.* Such payment may be enforced by the order of the judge of the superior court where the guardianship proceedings are pending. . . ."* This section also provides that payment shall not be exacted if there is likelihood of the patient's recovery and release from the hospital if payment would reduce his estate to such an extent that he is likely to become a burden on the community in the event of his release. If, however, the medical superintendent files a certificate that the patient is suffering from a chronic form of insanity and that recovery is beyond reasonable hope, then the guardian shall pay for the patient's care out of any moneys of the estate in his possession.

---

*All italics added, unless otherwise noted.

The guardian contends that "sufficient estate for the purpose" indicates an intent of the Legislature to limit the liability for care to a time contemporaneous with the acquisition of estate by the incompetent. However, a study of this and other sections of the code dealing with the subject does not support such contention. Section 6650 provides: "The husband, wife, father, mother, or children of a mentally ill person or inebriate, the estates of such persons, and the guardian and administrator of the estate of such mentally ill person or inebriate, shall cause him to be properly and suitably cared for and maintained, and shall pay the costs and charges of his transportation to a state institution for the mentally ill or inebriates. The husband, wife, father, mother, or children of a mentally ill person or inebriate, and the administrators of their estates, and the estate of such mentally ill person or inebriate, shall be liable for his care, support, and maintenance in a state institution of which he is an inmate. The liability of such persons and estates shall be a joint and several liability. . . ." Section 6651 provides that the monthly rate of care of inmates of the hospital shall be determined by the Director of Institutions and shall be payable in advance. The director, however, may reduce, cancel or remit the amount to be paid by the estate or relative on proof that the estate or relative is unable to pay. If any insane person dies while his estate is liable for his care, the claim for the amount due may be paid by the administrator of his estate as a *preferred* claim ranking with claims for expenses of last illness. Section 6652 provides that the department shall collect all the charges mentioned in section 6650 and take action therefor. The director, at his discretion, may refuse payment for care of any insane person who is eligible for deportation. Section 6653 requires the department, following admission of a patient, to investigate and determine if he has any moneys or property and any relative responsible under section 6650 for payment of his care, and the financial condition of such relative. Section 6657 provides that if the amount in the patient's personal deposit fund exceeds $500, the excess may be applied to the payment of his care (no limitation as to when that care was supplied). Section 6658 provides for an alternative method of collecting the charges (see *Estate of Gestner,* 90 Cal.App.2d 680 [204 P.2d 77]). Section 1502 of the Probate Code provides for the payment by the guardian from the estate of the incompetent for his suitable support and maintenance. Section 38 of the Civil

Code provides that an incompetent person is liable for the reasonable value of things furnished to him necessary for his support.

Thus, reading together all of the statutory provisions, as we are required to do (see *Guardianship of Thrasher,* 105 Cal.App.2d 768, 776 [234 P.2d 230]), it appears to be the policy of the Legislature as expressed in these sections, that care of an insane person must be paid for if his estate warrants it (and he is not likely to become a public charge on his release. If he is to be a patient permanently, then his estate, if any, is liable without regard to its sufficiency.) Also, certain relatives are liable for his care. There is nothing in the sections which limits the incompetent's liability to a period during which he owns estate. Nor is his relatives' liability so limited. The liability of both is there, although there may be no collectibility due to absence of estate or funds.

It is evident that section 6650 determines the obligation. Generally the other sections have to do with determining the amount and the method of collection. For the history of these sections of the Welfare and Institutions Code, see *Estate of Perl,* 110 Cal.App.2d 8 [242 P.2d 101].

There seems to be some question as to whether at common law the estate of an insane person was liable for his care in a public institution. (See 32 C. J. 687, § 374.) In *Estate of Yturburru,* 134 Cal. 567 [66 P. 729], the court stated that at common law an insane person was liable for necessaries furnished him by an individual, and "We see no reason why the same rule should not apply to a state hospital for the insane, which does and furnishes for the insane person only those things required by the law of the state. Certainly, those things which are required by law to be done and furnished for an insane person may safely be classed as necessaries." (P. 568.) The court there said (p. 569) : ". . . it is not necessary to extend charity to those who are able to support themselves; indeed, it would be unreasonable to do so" and "A law in effect requiring that patients at the hospitals for the insane shall be there supported out of their own estates is wise and reasonable. . . ." This attitude towards patients in our state hospitals is not opposed to that of the court in *Estate of Callen,* 152 Cal. 769 [93 P. 1011], largely relied on by the guardian. There, it was held that the estate of an incompetent could not be held liable for the claim of the state hospital for his care, where

the assets of the estate were less than the claims of private persons, which claims had accrued prior to his admission to the hospital. The court said in effect that being insolvent when admitted, his property equitably belonged to his creditors and hence the requirements of the then section 2176 of the Political Code that his estate be "sufficient for the purpose" of his care was not met. There is nothing in that case which even intimates that had there been in the estate a surplus of assets over those necessary to take care of the private creditors, the estate's liability would have been limited to care furnished after the acquisition of those assets. It might be pointed out that since the decision in that case section 6651 of the Welfare and Institutions Code has been adopted, allowing payment of state hospital care as a *preferred* claim. While such fact would not affect the decision in the Callen case, it is of some relevance in indicating the policy of the Legislature that state hospital care should be paid for.

In *Watt* v. *Smith*, 89 Cal. 602 [26 P. 1071], in holding a husband liable for the support of his indigent wife in a state hospital under the then statute requiring such payment, the court said: "Independently of the statute, he [the husband] is liable for the support of his wife." (P. 604.)

It is interesting to note that after the decision in the Callen case and in 1909, the Legislature took out of section 2176 of the Political Code the provision that the mentioned relatives are liable "if of sufficient ability." Such language did not appear thereafter in that section, nor does it appear in its reenactment into section 6650 of the Welfare and Institutions Code. Reading section 6655, "If any person committed . . . has sufficient estate for the purpose, the guardian shall pay for his . . . support . . . to the extent of the estate," with the fact that section 2176 of the Political Code had taken from it the requirement that the liability of relatives was limited to their being "of sufficient ability" and that such limitation does not appear in its successor, section 6650 of the Welfare and Institutions Code, plus the fact that under section 6650 the guardian is required to cause the incompetent "to be properly and suitably cared for and maintained" and shall pay the charges for his transportation to the state hospital, it would appear that the words "has sufficient estate for the purpose" were not a limitation as to time of furnishing the care but a limitation to the effect that there should be no personal liability of the

guardian. They are also intended as a limitation to the effect, as set forth in section 6651, that the estate must not be diminished so as to make the incompetent a public charge on his release. Section 6658, which provides that the department may bring an action to enforce payment for a patient's care against any person, guardian or relative, does not limit such action to a situation in which the judgment is collectible.

Authorities from other states are not much help, for the reason that they are based on the wording of their particular statutes. Because of these statutes "Ordinarily the liability extends to property acquired subsequently to the time the expenses were incurred" (44 C.J.S. 179), although there are jurisdictions where the statutes provided to the contrary. Thus in Wisconsin, at the time of the decisions in *In re Angle*, 183 Wis. 648 [198 N.W. 851], and *In re Decker's Guardianship*, 181 Wis. 484 [195 N.W. 316], cited by appellant, the statute expressly limited recovery by the state to situations where an incompetent "was at the time of receiving such relief, support, or maintenance the owner of property. . . ." The statute has since been changed. In *In re Hofmann's Estate*, 261 App.Div. 556 [26 N.Y.S.2d 430], without any discussion of the statutes, nor of the reasoning on which its statement was based, the court said that the incompetent was obligated to pay the state for her care out of her own separate estate, "if one was in existence at the time the obligation to pay accrued." (P. 432 [26 N.Y.S.2d].) Based on that decision and again without any discussion of the matter, the court in *Petition of Cummings*, 66 N.Y.S.2d 799, held to the same effect. Whatever the statute read at the time of the above New York decisions, in 1949 it expressly provided, "If the property of such patient or inmate is sufficient the committee shall pay for institutional maintenance incurred prior to the appointment of the committee." (*In re Tripp* 275 App.Div. 36 [87 N.Y.S.2d 137, 139].) In a Missouri case, *Barry County* v. *Glass*, (Mo.App.) 160 S.W. 2d 808, the statute provided for the recovery of public support from "any person who, by law, is bound to provide for the support and maintenance of such person [an incompetent], if there be any of *sufficient ability* to pay the same. . . ." (P. 809.) It was held that under that section the estate of the incompetent was liable for his care rendered prior to his inheritance from his mother's estate.

*State* v. *Thompson,* 45 Wyo. 350 [18 P.2d 619], held that under a Wyoming statute providing generally that the care of an incompetent shall be a charge against his estate, such liability is not limited to such estate as he had at the time of commitment or at any other particular time.

In *Guardianship of Giambastiani,* 1 Cal.App.2d 639 [37 P.2d 142], it was held proper to reimburse from an incompetent's estate, moneys expended by his brother for the incompetent's care and support prior to the appointment of such brother as guardian on the theory that the brother was acting as a de facto guardian. While the incompetent had estate at the time his brother was providing for his care, and therefore is different from the situation in our case, the case indicates the liberality of the courts in requiring an incompetent who is able to do so, to pay for his own care. Section 19 of the Welfare and Institutions Code provides: "The purpose of this code is to provide for protection, care, and assistance to the people of the State in need thereof. . . . It is the legislative intent . . . assistance shall be so administered as to encourage self-respect, self-reliance, and the desire to be a good citizen, useful to society."

The same idea is expressed somewhat differently in *In re Arnold's Estate,* 253 Pa. 517 [98 A. 701]. There when committed the insane person was an indigent. Approximately two years later he inherited a considerable estate. In requiring reimbursement to the state for his care prior to his inheritance the court said (p. 701 [98 A.]): " 'Why should the recipient of the supplies under such circumstances escape payment when in funds? If he is compelled to pay, he simply does that which in good morals he ought to do voluntarily. His payment enables the county to enlarge its liberality in other needy cases. It is said that such repayment is in conflict with the policy of our poor laws and our idea of charity. But it seems to us there is something radically wrong with the theory that a patient may leave an institution with a large estate of his own in his pocket without any legal obligation resting upon him to pay for the food he consumed. Such treatment of the patient is not calculated to stimulate his honesty or improve his citizenship. Nor does the demand for reimbursement under such circumstances detract from the charity. If the pauper receives the maintenance upon the condition that he shall pay when able, it answers his needs just as much as if there were no obligation to pay under any conditions.' "

STATUTE OF LIMITATIONS

Respondent concedes that the limitation set forth in section 345, Code of Civil Procedure (the four-year statute) applies. *Estate of Jacobson,* 56 Cal.App.2d 255 [132 P.2d 229], so holds. The court allowed reimbursement for five years' care. It should be reduced to four years, or $1,920. The judgment is reduced to $1,920, and in all other respects affirmed. Respondent is awarded costs.

Peters, P. J., and Wood (Fred B.), J., concurred.