[Civ. No. 8883.   Third Dist.   Dec. 19, 1956.]

GEORGE W. HARTUNG et al., Respondents, v. DINO POLLASTRINI et al., Appellants.

C. Ray Robinson, W. Eugene Craven, Robert T. McCartney and Donald E. Oren for Appellants.

Byers, Burd & Fraser, Gordon L. Byers, Fred K. Howell, Jr., Landram & Silveira and Hugh K. Landram for Respondents.

VAN DYKE, P. J.—Dino Pollastrini, Alex Maul, Maul and Pollastrini, a partnership, and Harrison Wiggins appeal from the judgment against them upon the plaintiffs' complaint and upon their cross-complaints.

The Hartungs, the respondents, own a ranch in Merced County, comprising 220 acres of land. They entered into an oral agreement with the partnership, Maul and Pollastrini. The trial court made findings concerning the contract which include the following: Maul, Pollastrini, and the partnership, all referred to hereafter as Pollastrini, agreed to prepare the Hartungs' land so that it could be irrigated; to sow the land with grasses suitable for permanent pasturage; and to complete the work by December 1, 1952. The Hartungs agreed to pay Pollastrini in cash any reasonable amounts he might charge. Payments were to be made when called for. It was further agreed that Pollastrini should investigate and

determine what type or mixture of seed would be most successful in that locality to produce permanent pasturage for raising and feeding white-faced Hereford cattle for sale. Pollastrini was to designate and employ any person he wished as surveyor, but the Hartungs were to pay the surveyor any reasonable amounts he might charge. The court found that Pollastrini began work on September 1, 1952, but did not complete it by December 1, 1952, as agreed; that frequently after December 1, 1952, and until about March 5, 1953, the Hartungs protested that the work was not completed and demanded that Pollastrini complete it as soon as possible; that on all such occasions Pollastrini promised to increase his efforts to finish the work in a short time, promised to use more men and equipment but did not do so; that these promises made after December 1st were made without any intention of performing them in order to induce the Hartungs to refrain from terminating the contract for breach; that as a result the Hartungs were induced to and did refrain from terminating the agreement until March 5, 1953, when the Hartungs terminated the contract for breach and employed others who completed the job. The court found that the Hartungs had performed their part of the obligation in all particulars, and that, as a result of the breach by Pollastrini, the Hartungs had been delayed in growing permanent pasture for a period of about five months to their damage in the amount of $3,000. The court also found that Pollastrini had received $20,255 for the work that he had done; that the reasonable value of the work was $11,755, and that the Hartungs had been damaged in the amount of $8,500 by the overpayment. As to appellant Wiggins, who was the surveyor selected by Pollastrini, the court found that he had been paid $1,215 for his services, which exceeded the reasonable value thereof by $515, and judgment was rendered against him for that amount.

Appellant Pollastrini attacks that part of the findings which finds that Pollastrini agreed to have the work completed and the ground seeded by December 1, 1952. There was ample evidence to support the finding. Hartung testified that the deadline for the completion of the work was December 1st, and Pollastrini admitted that December 1st was the date the work was to be completed. However, appellants assert that the agreement that the work be completed by December 1st was modified by the parties. They refer to testimony of Hartung to the effect that, in the latter part

of November, Pollastrini, when urged to sow the ground that was then ready, asserted to Hartung that it should not be done because the seed would freeze, and that sowing should be delayed until the following spring. Hartung testified: ''Well, I was disappointed, and told him so, but I also appreciated that, well, if we would lose the seed, we had better not plant it then. I agreed when he told me that we could lose the seed.'' From the findings it is apparent that the court found that there was no modification of the agreement to complete the work by December 1st. The question then is whether the implied finding is supported. In addition to the testimony of Hartung already referred to in which Hartung agreed to permit the seeding to be deferred on Pollastrini's representation that the seed would freeze if planted before December 1st, there was testimony that this statement of Pollastrini's was false. There was also the agreement that the work be completed by December 1st. At the time of the original agreement, Pollastrini made no mention of any risk if seed were planted before December 1st. When the conversation concerning seeding took place in late November, Pollastrini was far behind with the work, and the court could infer that he had a motive for making the false statement that the seed would freeze if planted before spring. There was testimony by experts that it was both customary and the best practice to plant permanent pasture in the fall of the year. The foregoing supports the court's implied finding that the contract was not modified nor the failure to plant by December 1st excused, for Pollastrini cannot rely upon conduct of Hartung fraudulently induced by him. (92 C.J.S., pp. 1058, 1059.)

Appellants contend that the court should have found as a matter of law that Hartung waived the breach of Pollastrini in not completing the work by December 1st. This contention cannot be sustained. The court found that on or about December 1st and every weekend thereafter, until on or about March 5, 1953, Hartung protested to Pollastrini that the work was not completed and demanded that he complete it as soon as possible; that on all such occasions Pollastrini falsely promised to increase his efforts to finish the work in a short time; and that the false promises were made in order to induce Hartung to refrain from terminating the agreement for breach. The court found that as a result Hartung was induced to and did refrain from terminating the contract. The court further found that as a result of

the original breach, and as a result of the broken promises made thereafter Hartung terminated the agreement. Appellants assert that, once Hartung elected to keep the contract alive, he could not thereafter elect to treat the contract as breached. In view of the findings of fraud, this rule is inapplicable. ■ Pollastrini is precluded from claiming waiver of breach where he fraudulently induced Hartung to permit him to continue and thereafter violated the promises he made to induce Hartung to permit him to continue. (*Wilkinson & Co.* v. *McKinley,* 84 Cal.App.2d 100 [190 P.2d 35].) Under the circumstances shown by the record in this case, the question of waiver was at most a matter of fact which the court resolved against Pollastrini.

■ By the terms of the oral agreement, Hartung agreed to pay Pollastrini any reasonable amount that Pollastrini might charge him. Pollastrini received an amount of $21,400 before the contract was terminated. Pollastrini claims that it was error for the court to receive any evidence of the reasonable value of the work which had been performed because the issue was solely whether Pollastrini used good faith in making his charges. Appellants assert that by the agreement the work was turned over to Pollastrini to complete as he might judge best, and that in the face of his testimony that he did exercise his best judgment the only issue before the court was whether he had done so, and not whether the work was well done or whether it was done for a reasonable charge, or what amount Hartung was reasonably benefited by the work Pollastrini did. We think that appellants misconstrue the contract. While it is true that Hartung was to pay Pollastrini any reasonable amount for his work and services that might be charged, the court found that the contract contained other undertakings on the part of Pollastrini. These included undertakings to level the land by discing, subsoiling, scraping and planing, to put up permanent borders with sufficient ditches to separately irrigate the checks, to provide efficient irrigation facilities, and not to harm the fertility of the soil. The contract also contained a provision that the work was to be done in a first-class manner and to the best benefit of the Hartungs. There was evidence that Pollastrini failed to keep his bargain. He did not use a land plane at all, which, according to testimony, left the land poorly leveled for irrigation. He failed to erect proper permanent borders, and, according to testimony, the basic plan for leveling was defective in that it required great quantities of dirt to be

moved long distances unnecessarily and to the damage of the land itself. Yet, his work had value. This the trial court recognized by allowing a figure which the court found to represent the true value of the services performed. We think it clear from the testimony and from the findings as well that by the agreement Pollastrini agreed to complete a finished job of land leveling and seeding by December 1, 1952; that it should be a good job, properly and efficiently done; and that for such a job he was to be paid a reasonable sum in compensation. To be sure, he was expressly given wide latitude, but this was shown to be because Hartung was known by him to be, and was in fact, grossly ignorant of how land should be leveled for the purpose of permanent pasturage under irrigation, and of how much such work would ordinarily cost. In giving Pollastrini broad power, Hartung relied upon Pollastrini's statements and upon the statements of others as to his long experience in such work and his good reputation as a land leveler. There was nothing in the negotiations or in the terms of the contract to indicate that Pollastrini was to do what he pleased and charge what he pleased for it.

While we have not specifically discussed each and every contention advanced in the briefs by the appellants, we think that what we have said disposes of all the issues.

The judgment appealed from is affirmed.

Peek, J., and Schottky, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 13, 1957.