[Civ. No. 31484. First Dist., Div. One. May 11, 1973.]

Guardianship of the Person and Estate of ALICE FRANCIS GRIDLEY, an Incompetent Person.
ARNOLD GRIDLEY, Plaintiff and Appellant, v.
DEPARTMENT OF MENTAL HYGIENE, Defendant and Respondent.

1054

## Counsel

Alexander Poeter and Michael L. Krassner for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, and Eleanor Oducayen, Deputy Attorney General, for Defendant and Respondent.

## Opinion

**SIMS, J.**—Appellant, as the guardian of an incompetent, has appealed from a "judgment" (order) entered in the guardianship proceedings which ordered him to pay $15,800.23 from the assets of the estate of the incompetent to the Department of Mental Hygiene for charges incurred by the department in providing for her care at Napa State Hospital from May 1966 through June 1969. (See Welf. & Inst. Code, § 7279.[1]) He contends that the trial court erroneously denied a hearing to determine the reasonableness of the department's charges, and, in the alternative, that the provisions authorizing the order are unconstitutional if they are interpreted as directing an order for payment without affording a hearing on the issue of the reasonableness of the charges. An examination of the record

---

[1]Section 7279 of the Welfare and Institutions Code (Stats. 1967, ch. 1667, § 40, p. 4157) was not operative until July 1, 1969. However it incorporates verbatim the following provisions of former section 6655 (Stats. 1943, ch. 1052, § 2, p. 2992): "If any person committed to a State mental hospital has sufficient estate for the purpose, the guardian of his estate shall pay for his care, support, maintenance, and necessary expenses at the mental hospital to the extent of the estate. Such payment may be enforced by the order of the judge of the superior court where the guardianship proceedings are pending. On the filing of a petition therein by the department showing that the guardian has failed, refused, or neglected to pay for such care, support, maintenance, and expenses, the court, by order, shall direct the payment by the guardian. Such order may be enforced in the same manner as are other orders of the court. . . ."

The third paragraph begins, "Payment for the care, support, maintenance, and expenses of person at a state hospital shall not be exacted, however, if there is likelihood of the patient's recovery or release from the hospital and payment will reduce his estate to such an extent that he is likely to become a burden on the community in the event of his discharge from the hospital. . . ."

It is not contended that the payment sought in these proceedings will reduce the incompetent's estate to such an extent. The accounting produced in response to the petition involved in these proceedings reveals that it consisted of a one-half interest in the estate of the incompetent's deceased mother, which had an appraised value of $120,878.72 and was distributed to her on August 21, 1969. From that property, a one-half interest in real property in Los Angeles County, which was appraised at $23,333.33, was subsequently sold, when condemned, at a price of $82,500.

reflects that the procedure involved in these proceedings does furnish the estate of the incompetent a hearing as required under constitutional provisions guaranteeing due process of law; that the judgment of the court is sustained by substantial evidence; and that there was no error in rejecting the guardian's offer to prove the prices charged by private institutions.

The reporter's transcript of the proceedings, which was the sole record requested by appellant, indicates that the matter came before the court on April 28, 1971, following the setting aside of a prior order of the court dated February 3, 1971, pursuant to a stipulation of the parties dated March 30, 1971. No testimony or evidence was adduced and following oral argument each party was given 10 days within which to brief his contentions. The clerk's transcript merely sets forth the court's judgment, dated October 6, 1971, and the notice of appeal and notice to prepare reporter's transcript. The reporter's transcript indicates that the proceedings commenced with a petition filed by the department on August 11, 1969. At the hearing on appeal it was stipulated that the record on appeal might be, and accordingly it has been, augmented by reference to all relevant documents filed in the proceedings commencing with that petition.

The petition filed August 11, 1969, seeks an accounting from the guardian (see Prob. Code, § 1553, and note § 1554), and the establishment of an equitable lien in favor of the department on the estate of the incompetent in the sum of $27,313.99, representing $12,540.66 ordered paid by a prior order signed and filed August 18, 1966, covering charges for the care, support and maintenance of the ward from June 1, 1962, to April 30, 1966, and the additional sum of $14,773.33 for the period from May 1, 1966, through April 30, 1969.

Thereafter proceedings on the petition were suspended while the guardian secured a new attorney and filed an accounting. By stipulation dated April 28, 1970, and filed May 15, 1970, the guardian was given until May 7, 1970, within which to file points and authorities in opposition to the department's prayer for an equitable lien. On May 11, 1970, the guardian filed an answer to the department's petition in which he admitted that no payments had been made for the support and care of the incompetent, and further set forth: "He denies the amount alleged as unpaid charges, save for such part thereof as may have been heretofore adjudicated. He expressly denies that any charges may be fixed against the ward herein unilaterally by petitioner without determination of the just and actual amount of any claimed charges or expense to petitioner, judicially resolved upon adversary hearing, and by due process of law. He denies the allegations as to amounts claimed,

and avers that the claimed amounts exceed the actual and reasonable cost of maintaining the ward. He is unable at this time to give a detailed statement of the exact amount actually expended, and reasonably necessary, to maintain said ward; and, for want of sufficient information or belief, he denies the entire claim."

Thereafter, proceedings were continued pending further accounting by the guardian and the sale of the incompetent's interest in certain real property. $28,340.89 of the proceeds of sale was impounded by order of court to secure the claims of the department, and on November 10, 1970, $12,540.66 was released to satisfy the August 18, 1966 order.

On February 3, 1971 the department secured an order for the payment of $15,800.23 for the period from May 1, 1966 through June 30, 1969. At the same time the guardian substituted in his present attorney, and the new attorney arranged for the stipulation and order setting aside the February order. It was stipulated that the prayer of the petition be deemed amended to seek payment rather than the mere creation of a lien.

So far as is material here, the law provides that the estate of a patient in a state hospital for the mentally disordered shall be liable for his care, support and maintenance in the state institution of which he is a patient. (Welf. & Inst. Code, § 7275.[2] See *Estate of Yturburru* (1901) 134 Cal.

---

[2]Section 7275 (Stats. 1967, ch. 1667, § 40, p. 4156, as amended Stats. 1968, ch. 1374, § 120, p. 2688) was not operative until July 1, 1969. However it incorporated with respect to patients in a state hospital for the mentally disordered provisions substantially similar to those found in former section 6650. (Stats. 1965, ch. 1797, § 31, p. 4155) which read: "The husband, wife, father, mother, or children of a mentally ill person or inebriate, the estates of such persons, and the guardian and administrator of the estate of such mentally ill person or inebriate, shall cause him to be properly and suitably cared for and maintained, and shall pay the costs and charges of his transportation to a state institution for the mentally ill or inebriates. The husband, wife, father, mother, or children of a mentally ill person or inebriate, and the administrators of their estates, and the estate of such mentally ill person or inebriate, shall be liable for his care, support, and maintenance in a state institution of which he is a patient. The liability of such persons and estates shall be a joint and several liability, and such liability shall exist whether the mentally ill person or inebriate has become a patient of a state institution pursuant to the provisions of this code or pursuant to the provisions of Sections 1026, 1368, 1369, 1370, and 1372 of the Penal Code."

The legislative intent to impose liability on relatives has been curtailed on constitutional grounds in *Department of Mental Hygiene* v. *Hawley* (1963) 59 Cal.2d 247, 255-257 [28 Cal.Rptr. 718, 379 P.2d 22] [liability of father of one committed under provisions of sections 1026 or 1368 of the Penal Code]; *Dept. of Mental Hygiene* v. *Kirchner* (1964) 60 Cal.2d 716, 719-723 [36 Cal.Rptr. 488, 388 P.2d 720, 20 A.L.R.3d 353], vacated *Department of Mental Hygiene* v. *Kirchner* (1965) 380 U.S. 194 [13 L.Ed.2d 753, 85 S.Ct. 871], and reiterated *Dept. of Mental Hygiene* v. *Kirchner* (1965) 62 Cal.2d 586, 588 [43 Cal.Rptr. 329, 400 P.2d 321, 20 A.L.R.3d

567, 568-569 [66 P. 729]; *Guardianship of Hicks* (1964) 228 Cal.App.2d 629, 632 [39 Cal.Rptr. 698]; *Estate of Setzer* (1961) 192 Cal.App.2d 634, 637-638 [13 Cal.Rptr. 683]; and *Estate of Phipps* (1952) 112 Cal.App.2d 732, 735 [247 P.2d 409, 33 A.L.R.2d 1251].) In *Guardianship of Hicks, supra,* the court stated, "The liability of the estate of the incompetent for the charges made for her care at the state hospital is a statutory one and is unconditional. [Citations.] When the Supreme Court, in *Department of Mental Hygiene* v. *Kirchner,* 60 Cal.2d 716 . . . decided that the statutes imposing liability for cost of care of an incompetent upon certain relatives are unconstitutional, it made a distinction, as it had in *Department of Mental Hygiene* v. *Hawley,* 59 Cal.2d 247 . . . of the liability of relatives from liability of the estate, and did not overrule the *McGilvery* case insofar as the latter held the estate liability to be unconditional (pp. 719-720)." (228 Cal.App.2d at p. 632.)

The code directs the department to collect the costs and charges for the care, support and maintenance of a patient in a state hospital for the mentally disordered (see § 7277, operative July 1, 1969, and former § 6652, as amended 1953 [Stats. 1953, ch. 292, § 1, p. 1446]; and, as amended operative October 1, 1967 [Stats. 1967, ch. 1620, § 8, p. 3863]; *Estate of Setzer, supra,* 192 Cal.App.2d 634, 638; and *Estate of Phipps, supra,* 112 Cal.App.2d 732, 734.) In seeking reimbursement from the estate of an incompetent the department may proceed by way of an independent action against his estate as represented by his guardian (§ 7282, operative July 1, 1969, former § 6658 [Stats. 1965, ch. 1797, § 33, p. 4155]), or by petition filed in the guardianship proceedings. (§ 7279, fn. 1 above. See also *Guardianship of Hicks, supra,* 228 Cal.App.2d 629, 631; *Estate of Setzer, supra,* 192 Cal.App.2d 634, 638; *Estate of Phipps, supra,* 112 Cal.App.2d 732, 733-734; *Estate of Gestner* (1949) 90 Cal.App.2d 680, 683-686 [204 P.2d 77] [cf. *Department of Mental Hygiene* v. *Hawley, supra,* 59 Cal.2d 247, 256, fn. 2 above, re liability for criminal insane]; and *Estate of Jacobson* (1942) 56 Cal.App.2d 255, 257-258 [132 P.2d 229].)

As of May 1, 1966, the Legislature had provided the following procedure for determining the charges. "The rate for the care, support, and maintenance of all mentally ill persons and inebriates at the state hospitals for the mentally ill where there is liability to pay for such care, support, and maintenance, shall be reviewed each fiscal year and fixed at the statewide aver-

361] [liability of daughter's estate for care furnished her incompetent mother]. Therefore, the following cases, cited below, are only of procedural value, and have been overruled or disapproved on the issue of substantive liability of a relative. (*Estate of Setzer, supra,* 192 Cal.App.2d 634; and *Dept. of Mental Hygiene* v. *Rosse* (1960) 187 Cal.App.2d 283 [9 Cal.Rptr. 589].)

age per capita cost of maintaining patients in all state hospitals, as determined by the Director of Mental Hygiene. The rate thus fixed shall continue in effect until a new rate is fixed. . . ." (Former § 6651, as amended Stats. 1961, ch. 176, § 1, p, 1181. See *Guardianship of Hicks, supra,* 228 Cal.App.2d 629, 631; *Estate of Setzer, supra,* 192 Cal.App.2d 634, 637 and 639-640; *Dept. of Mental Hygiene* v. *Rosse, supra,* 187 Cal.App.2d 283, 284 and 287-288; *Estate of Phipps, supra,* 112 Cal.App.2d 732, 734; *Estate of Perl* (1952) 110 Cal.App.2d 8, 9-16 [242 P.2d 101]; and *Estate of Stobie* (1939) 30 Cal.App.2d 525, 527-529 [86 P.2d 883].)

In *Estate of Perl, supra,* the applicable statute (former § 6651, as amended Stats. 1943, ch. 1052, § 1.5, p. 2991) provided in pertinent part, "The monthly rate . . . shall be determined by the Director of Institutions. . . ." The director fixed a rate based upon the per capita cost of all inmates. The court reviewed earlier provisions which had established a fixed rate or a fixed maximum and upheld the director's practice (110 Cal. App.2d at pp. 10-16). The court commented, "The method of determining the rate was correct. Upon the per capita basis, if all inmates paid in full, the state would be paid the actual cost to it for the care, support, and maintenance of all inmates at the hospital." (*Id.* at p. 10.) In 1954, as an urgency measure, the use of "the state-wide average per capita cost of maintaining patients in all state hospitals" was enacted into the law for the first time. (Former § 6651, as amended Stats. 1954, ch. 3, § 1, p. 109.)

At the hearing before the trial court, in deference to *Estate of Perl, supra,* the appellant acknowledged that there was statutory and case law authority for such of the monthly charges as were predicated upon a per capita basis. He apparently limited his attack to those charges which were imposed commencing April 1, 1968, under amendments to the statute now to be reviewed. In view of this concession, he is in no position to attack the charges prior to that date.

On August 30, 1967, section 4025 was added to the code and section 6651 was amended as part of an urgency measure to be effective October 1, 1967. (Stats. 1967, ch. 1620, §§ 1, 7 and 15, pp. 3862, 3863 and 3866.)

Section 4025, as added and as subsequently reenacted operative July 1, 1969 (Stats. 1968, ch. 1374, § 8, p. 2638), read and reads: "Charges made by the department for the care and treatment of each patient in a facility maintained by the department shall not exceed the actual cost thereof as determined by the director in accordance with standard accounting practices. The director is not prohibited from including the mount of expenditures for capital outlay or the interest thereon, or both in his determination

of actual cost. [¶] As used in this section, the terms 'care' and 'care and treatment' include care, treatment, support, maintenance, and other services rendered by the department to a patient in the state hospital or other facility maintained by or under the jurisdiction of the department."

Section 6651 as then amended, and as subsequently renumbered and amended as section 7276 operative July 1, 1969 (Stats. 1968, ch. 1374, § 101, p. 2684), provided and provides in pertinent part: "The charge for the care and treatment of all mentally [ill] *disordered* persons and [inebriates] *alcoholics* at state hospitals for the mentally [ill] *disordered,* for when there is a liability to pay therefor shall be determined pursuant to section 4025. . . ." ([ ] indicate matter deleted and emphasis indicates matter substituted in 1968.)

Section 15 of the enactment provided that the foregoing provisions "shall become operative on October 1, 1967, except that, with the approval of the Director of Finance, the Director of Mental Hygiene may institute the new method of determining charges prescribed by this act at one or more of the facilities under the jurisdiction of the Department of Mental Hygiene on and after such operative date and continue to determine the charges for the remaining facilities in accordance with the law in effect prior to the effective date of this act, but such new method shall be used at all such facilities on or before January 1, 1970." It was apparently agreed that under the foregoing authority the new method of determining charges was first instituted April 1, 1968.

I

Appellant points out that either under the per capita method or under the actual cost method there is no statutory provision for hearing with respect to the establishment of the charges. He contends that he is entitled to a trial de novo to determine the validity of the charges. In *Alta-Dena Dairy* v. *County of San Diego* (1969) 271 Cal.App.2d 66 [76 Cal.Rptr. 510] the court pointed out: "Where, as here, the order of an administrative officer adversely affects a valuable and existing property right, where it is made without notice or hearing under a regulation which makes no provision for hearing or administrative review, the fundamental principles of due process come into play. Somewhere along the line appellant is entitled to meet its adversary on equal footing in a full and fair hearing, before an impartial tribunal, with the full and complete right to present evidence and cross-examine witnesses [citation]. Unless such right is available to appellant by a trial *de novo* in the superior court, the very regulation under which respondent Askew acted would violate due process and thus be unconstitutional.

[Citations.]" (271 Cal.App.2d at p. 77. See also *H. Moffat Co.* v. *Hecke* (1924) 68 Cal.App. 35, 39 [228 P. 546].)

The foregoing authorities on which appellant relies are not in point. Here the incompetent's estate is entitled to its day in court whether the director proceeds in the guardianship proceedings (§ 7279 [§ 6655]), or by independent action (§ 7282 [§ 6658].) A similar contention was raised ·in *Estate of Stobie, supra,* and disposed of as follows: "The fact that this case is before this court is sufficient answer to appellant's argument of lack of due process of law. The statute requires the state to go into the superior court to collect the money due it. There the guardian is brought ·into court, after notice, and is given a tribunal in which to present his evidence and, in any lawful manner, resist the claim against the estate. A right of appeal from the judgment is given. Due process of law can require no more." (30 Cal.App.2d at p. 530. See also *County of Los Angeles* v. *Frisbie* (1942) 19 Cal.2d 634, 645-646 [122 P.2d 526]; *Estate of Gestner, supra,* 90 Cal. App.2d 680, 683-686; and *Estate of Jacobson, supra,* 56 Cal.App.2d 255, 258.)

Appellant's true complaint is, not that he has been denied a hearing, but that the court erred in its rulings and determination at that hearing.

## II

■ At the hearing the department asked the court to take judicial notice of the rate charges which had been determined by the director under the applicable statutes. The department served and filed with its brief what appears to be facsimile copies of a certified copy of the itemization of the account of the incompetent as maintained in the official records of the Department of Mental Hygiene. This account covers the period from May 1, 1966 through June 30, 1969, and shows a total balance due of $28,340.99, or $15,800.23 over the sum paid pursuant to the earlier order. A facsimile of a letter indicates that the former attorney for the guardian was furnished a copy of a more itemized account under date of October 20, 1970, and a copy of that account was also furnished the court. The foregoing accounts are supported by facsimiles of declarations by an agent of the department setting forth the respective monthly rates fixed by the director during the period from May 1, 1966, through March 31, 1968, and the schedule of patient care and treatment costs adopted for the fiscal year 1969-1970, and the application of these figures to the account of the incompetent.

No objection was made to the form in which these matters were presented to the court. (See Evid. Code, §§ 453-455.) The official acts of the

director in establishing the rates, and the rates so established were matters of which the court could take judicial notice. (Evid. Code, § 452, subds. (b) and (c); *Guardianship of Hicks, supra,* 228 Cal.App.2d 629, 633; and *Dept. of Mental Hygiene* v. *Rosse, supra,* 187 Cal.App.2d 283, 287.) These documents support the judgment.

## III

 The gravamen of appellant's complaint is that he was precluded from producing evidence to show that the charges fixed by the director, apparently those made after March 30, 1968, on the basis of actual cost, were unreasonable. He relies, as a matter of law, on the provisions of Civil Code section 38 which read, "A person entirely without understanding has no power to make a contract of any kind, but he is liable for the *reasonable value* of things furnished to him necessary for his support or the support of his family." (Italics added.)

In *Estate of Yturburru, supra,* the court in upholding the constitutionality of the law imposing liability upon the incompetent's estate said, "An insane person is liable for the reasonable value of things furnished to him, necessary for his support. (Civ. Code, § 38.) This was so at common law, where the necessaries were furnished by an individual, and we have never seen a case, and do not think any can be found, holding that this rule comes in conflict with any provision of the constitution of this state or of any other state of the Union. We see no reason why the same rule should not apply to a state hospital for the insane, which does and furnishes for the insane person only those things required by the law of the state. Certainly, those things which are required by law to be done and furnished for an insane person may safely be classed as necessaries." (134 Cal. at p. 568.) In that case, however, there was no issue as to the amount which could properly be charged for the maintenance of the patient.

In *Estate of Perl, supra,* an argument similar to that advanced by appellant was countered, and the earlier case was distinguished, as follows: "Appellant further contends that the estate is liable for the 'reasonable value' of the care, support and maintenance furnished the patient and that the per capita cost thereof to the state does not necessarily represent such reasonable value. In support thereof, he cites *Estate of Yturburru,* 134 Cal. 567. . . . It is true that in that case the court did speak of reasonable value, but the 'only point urged by the guardian for a reversal of the order' there involved was to the effect that the law making the guardian responsible for maintenance of his ward was unconstitutional (p. 568). In over-

ruling that contention, the court observed that an insane person is liable for the reasonable value of things furnished to him, necessary for his support, citing section 38 of the Civil Code, and concluded that there was nothing in the Constitution to prevent the Legislature from 'requiring that patients at the hospitals for the insane shall be there supported out of their own estates' (p. 569). We do not infer from that holding that the court intended to prescribe a particular method for the computation of a monthly rate of charge. Moreover, that decision was rendered prior to the time when the Legislature by statute prescribed a fixed sum as the monthly rate for all patients able to pay. It is not a decision upon the point in issue upon the appeal now before us." (110 Cal.App.2d at pp. 15-16.)

In *Guardianship of Hicks, supra,* as quoted above, the court pointed out that the statutory liability is unconditional. (See 228 Cal.App.2d at p. 632.) The Legislature may designate, and has by the specific statute designated, the charges which may properly be made to those entrusted to its care.

This does not mean that the estate of the incompetent may be charged with expenses that were not properly incurred or determined, or that the department and the director are not accountable if an attempt is made to impose charges not warranted by the statutory mandate. In *Estate of Jacobson, supra,* the court recognized that the statute of limitations would be a defense to a state claim for reimbursement (56 Cal.App.2d at pp. 257-260). In *Estate of Setzer, supra,* the court in upholding the charges noted that it did not appear that the guardian offered any evidence in the trial court to sustain his attempt to assert on appeal that the monthly rates for the care of the incompetent had not been properly determined and fixed by the director because he failed to announce any computation and because there was no available statement of items of costs entering into the declaration of the charges (192 Cal.App.2d at p. 639). The case indicates that the guardian may show that the director was guilty of dereliction or that the action taken by him was arbitrary or discriminatory, but that in the absence of evidence to that effect, a presumption of regularity will prevail. (*Id.;* and see *Estate of Stobie, supra,* 30 Cal.App.2d 525, 530-531.)

So here, although the record reflects that appellant took the deposition of one of the department's employees, that testimony was not used. It must be assumed that it sustained the regularity of the charges which were actually imposed.

Similarly in *Dept. of Mental Hygiene* v. *Rosse, supra,* the court pointed out: "At no time during the trial did defendant dispute the accuracy of the arithmetic calculations on the official ledger sheets offered in evidence. He

offered no evidence nor contention, nor even suggestion, that the items were not truly and correctly recorded. He did not ask for cross-examination of the bookkeeper as to the correctness of the entries, either on *voir dire* or as a matter of defense." (187 Cal.App.2d at p. 285.)

The statutes are aimed at recovering the cost of the service. In *Estate of Stobie, supra,* the court observed, "The statute makes the estate of the insane person liable for his care, support and maintenance only, which is but another way of saying that the liability is only for the cost of such service. As the state cannot make a profit from its care of patients in its hospitals the words used in the present statute rather clearly imply that the amount to be collected from the estate of the insane person must be limited by the cost of that person to the state. That cost should not only include the annual money expended but should take into consideration the capital investment, depreciation, and other such legitimate expenses of the state." (30 Cal.App. 2d at p. 529. See also *Estate of Perl, supra,* 110 Cal.App.2d 8, 13.)

Insofar as the guardian's argument at the hearing constituted an offer of proof, it fell short of the mark. He apparently wanted to introduce evidence to show that private institutions which were making a profit charged from one-fifth to one-third of the state's charge for providing the same care and treatment that the public institution furnished. Specifically he alleged that the state was only allowing $172.50 for maintenance in private nursing homes, and charging from $550 to $730 for patients in public institutions. He equated the charges with any other bill for goods or services furnished in which the reasonable value was questioned. (See *Dewhirst* v. *Leopold* (1924) 194 Cal. 424, 433 [229 P. 30]; *Hartung* v. *Pollastrini* (1956) 147 Cal.App.2d 88, 92-93 [304 P.2d 846]; *Caulfield* v. *Market Street Ry. Co.* (1937) 20 Cal.App.2d 220, 221 [66 P.2d 752]; and *Davis* v. *Fyfe* (1930) 107 Cal.App. 281, 284 [290 P. 468].) He also referred to the right of a property owner to establish the fair market value of property condemned by the state.

The department objected to the foregoing offer of proof on the ground that there was no showing that the services available and furnished at a private nursing home were commensurate with those at a state hospital, and on the ground that the issue was not the price at which the services could be purchased in the open market, but whether the director had followed the statutory mandate in allocating the proper share of the actual costs of the services rendered by the hospital to the charges levied against the patient's estate.

At first blush it might appear improper to charge the patient with what

might be proved to be inefficient operations by the public institution. On the other hand, if each person liable under the law as constitutionally applied were permitted to question the price of pills, nursing and psychiatric services, room and board, by adducing the testimony of an expert of his choice in separate actions for the recovery of the charges, the situation would be chaotic. The situation is analogous to special assessment proceedings where the assessments are designed to recover the cost of the work. The general rule in such cases is stated as follows: "Under the principles established in this state and elsewhere, this final decision of the supervisors as to the property benefited and the amount to be assessed is conclusive, unless attacked on the ground of fraud or mistake." (*Larsen* v. *San Francisco* (1920) 182 Cal. 1, 14 [186 P. 757].) In that case the court also pointed out, "There were more than sixteen thousand parcels of land assessed. If the owner of each of these parcels could separately maintain an action and therein reopen the entire question of benefits received and the proportion to be charged against the respective parcels, it is plain that any proceeding of such magnitude, or even of far less extent, could, and probably would, be effectually blocked by unending litigation. Such construction is not to be indulged if it produces such absurd consequences." (*Id.* at p. 17.)

If there is graft, fraud, or gross inefficiency which is pushing up the actual costs of the services in question the matter is one to be rectified by governmental action prodded by a vigilant public. As indicated by the cases referred to above, the charges determined in accordance with the statutory mandate should control, in the absence of evidence showing that the determination itself was erroneous because of some dereliction of duty by the officer computing them, or because he acted in an arbitrary or discriminatory manner. Although the matters proffered by appellant might have been a circumstantial evidence pointing to such a conclusion, the trial court properly rejected it as too remote.

The "judgment" (order) is affirmed.

Molinari, P. J., and Elkington, J., concurred.

A petition for a rehearing was denied on June 7, 1973, and the following opinion was then rendered:

**THE COURT.**—By petition for rehearing the guardian prays that the case be reversed and remanded to the probate court for a hearing to determine whether payment will reduce the estate to such an extent that the incompetent is likely to become a burden to the community. (See fn. 1 of opinion.) This issue was not raised in the guardian's answer or else-

where prior to the petition for rehearing. It, therefore, cannot be considered now. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 598, p. 4526.) His contention that he did not know the court was entertaining an application for an order for payment is inconsistent with the stipulation amending the petition to that effect. His complaint that he was denied the right to present evidence can only be viewed in the light of the evidence he offered to produce. It proved to be irrelevant.

Appellant's petition for a hearing by the Supreme Court was denied July 6, 1973. Sullivan, J., did not participate therein.